## UNITED STATES *v.* MORGAN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 463.   Argued October 19, 1911.—Decided December 11, 1911.

It is not a condition precedent to prosecutions for violation of the
  Pure Food and Drug Act that an investigation or hearing be had
  in the Department of Agriculture.

Where a statute provides for notice in one case and permits prosecu-
  tions without notice in another case it shows that there was no intent
  to make notice jurisdictional.

Repeals by implication are not favored; nor is there a presumption that
  a law passed in the interest of public health was intended to hamper
  prosecutions of offenses against the statute itself.

A statute will not be construed as grafting exceptions on the criminal
  law in favor of offenders against that particular statute in the absence
  of clear and unambiguous expressions.

Citizens are furnished the surest safeguards against malicious prosecu-
  tions by the Fourth Amendment.

Section 4 of the Pure Food and Drug Act of June 30, 1906, c. 3915, 34
  Stat. 678, does not repeal Rev. Stat., §§ 771 or 1022, making it the
  duty of the district attorney to prosecute all delinquents for crimes
  and offenses cognizable under the authority of the United States, nor
  does it limit him to prosecute only those offenders who have had a
  hearing before the Department of Agriculture.

THE defendants maintained an establishment in New York where, after filtering Croton water drawn from the city pipes, adding mineral salts and charging it with carbonic acid, the water was bottled and sold as "Imperial Spring Water." In October, 1908, a food and drug inspector applied to a druggist in Newark, New Jersey, for several bottles of this water. The druggist, not having them in stock, ordered them from the defendants, who shipped them from New York to the druggist in Newark. He delivered them to the inspector, who paid therefor.

The judge, in his opinion, treats the prosecution as having been instituted by the inspector, though this does not affirmatively appear in the record, and the defendants were not indicted until April, 1910, when they were found guilty of shipping misbranded goods in interstate commerce. They moved in arrest of judgment on the ground that it was not alleged that they had been given notice and a preliminary hearing by the Department of Agriculture, contending this was a condition precedent to the return of a valid indictment. The judge held that such hearing must be granted in all cases where the prosecution was instituted by the Department of Agriculture or its agent (181 Fed. Rep. 587), and from a later order sustaining the motion in arrest the Government brought the case here under the Criminal Appeals Act.

*The Solicitor General,* with whom *Mr. Jesse C. Adkins* and *Mr. Loring C. Christie* were on the brief, for the United States:

In no case is it a condition precedent to prosecution for a violation of the Pure Food and Drugs Act that an investigation or hearing be had in the Department of Agriculture.

The Federal grand jury possesses full inquisitorial power and may indict upon knowledge acquired either from their own observations or upon the evidence of witnesses called

of their own motion before them, and even though no preliminary hearing be had before a committing magistrate. *Hale* v. *Henkel,* 201 U. S. 43.

The departmental investigation and hearing do not constitute a means of defining any element of the crimes. They are defined by §§ 1 and 2 of the act. The offense was putting a misbranded article of food into interstate commerce, and the crime was committed when the shipment was made. The manner of acquiring the evidence can make no change in the crime.

Uniformity of procedure does not require the construction contended for. Such preliminary hearing is not intended as an aid to the court.

The lawfulness of the manufacturer's label depends only on its truth, not on any action of the Secretary of Agriculture. The latter cannot make pure what is adulterated, nor make true what is false. Nor does the Secretary's finding *prima facie* establish the defendant's guilt. Such construction would be prejudicial to the accused and an invasion of his rights.

If the departmental findings are not received in evidence they should not be averred in the indictment.

The provisions for investigation by the Department are not inconsistent with prosecutions through the ordinary channels or criminal procedure. The object of the statute is accomplished by prosecutions in either way.

In construing statutes imposing upon certain public officers the duty of their enforcement, such duty is not exclusive, but proceedings for violations of the statute may be begun in the usual way. *Commonwealth* v. *Carroll,* 145 Massachusetts, 403; *Commonwealth* v. *Murphy,* 147 Massachusetts, 577; *Commonwealth* v. *Mullen,* 176 Massachusetts, 132; *Isenhour* v. *State,* 157 Indiana, 517; *Commonwealth* v. *Spencer,* 28 Pa. St. 301; *Commonwealth* v. *Arrow,* 32 *Ib.* 1; *People* v. *Beaman,* 102 N. Y. App.

Div. 155; *Attorney General* v. *Great Northern Railway Co.,* 1 Dewry and Smale, 154.

The departmental hearing is not necessary to the rights of the accused.   The object of the hearing is to protect the innocent dealer who furnishes evidence to fasten the crime upon the guilty person.   This right is not lost by the retailer even though he may have no hearing.   The production of the guaranty at the trial will insure his acquittal.

In the present case the sample was not obtained from the defendants; hence they were not entitled to notice or hearing.  *Inter. Com. Com.* v. *Chicago, Rock I. & Pac. Ry. Co.,* 218 U. S. 109.

The construction contended for if applied to libels under § 10 of the act would practically destroy the value of the act.

The remedy under that section is the destruction of the offending article itself.   This remedy is independent of the criminal prosecutions prescribed in §§ 1 and 2.  *Hipolite Egg Co.* v. *United States,* 220 U. S. 55.

That such inquiry is not necessary in civil proceedings has been held by the courts in the following cases:  *United States* v. *Fifty Barrels of Whiskey,* 165 Fed. Rep. 966; *United States* v. *Sixty-five Casks of Liquid Extracts,* 170 Fed. Rep. 449; *United States* v. *Nine Barrels of Olives,* 179 Fed. Rep. 983; *United States* v. *One Hundred Barrels of Vinegar,* 188 Fed. Rep. 471.  *United States* v. *Twenty Cases of Grape Juice,* decided May 8, 1911, 189 Fed. Rep. 331, can be distinguished from this case.

*Mr. Alexander Thain* for defendants in error:

This court has no jurisdiction to review the decision of the court below.

The construction given to the statute by the court below is in accordance with well-established legal principles.

· The obvious purpose in providing a hearing was to prevent injustice and abuse of the statute by business rivals of the manufacturer, who might otherwise, by laying complaint with the attendant publicity, ruin that competitor's business before he ever had his day in court and an opportunity to disprove the charge. The act can be and should be so construed as to prevent such results.

The statute in providing for a preliminary hearing intended that both the dealer and the manufacturer should have an opportunity to be heard on these and similar questions and to show their good faith before the drastic measures are resorted to. See debate in the Senate February 2, 1906 (Congressional Record, Vol. 40, Part 2, p. 1923), from which it is clear that Congress contemplated that the manufacturer and dealer should have an opportunity to be heard before criminal proceedings were commenced against them.

The courts have already had occasion to comment upon the fact that the usefulness of this act is threatened by the unreasoning zeal sometimes shown in its enforcement. · *In re Wilson*, 168 Fed. Rep. 566 at 568; *French Silver Dragee Co.* v. *United States*, 179 Fed. Rep. 824.

When an act, not before subject to punishment, is declared penal, and a mode is pointed out in which it is to be prosecuted, that mode must be strictly pursued. Wharton's Crim. Pleading & Practice, 9th ed., § 230; 1 Wharton's Precedents, p. 23, and cases; *Commonwealth* v. *Chase*, 125 Massachusetts, 202.

Special matter of the whole offense should be set forth in the indictment with such certainty that the offense may judicially appear to the court. 1 Wharton's Precedents &c., Ch. II, notes, p. 22. *United States* v. *Cruikshank*, 92 U. S. 542; *United States* v. *Simmons*, 96 U. S. 360; *People* v. *Taylor*, 3 Denio, 91.

Where a statute attaches to a named offense certain technical predicates, these predicates must be used in the

indictment.   Beal, Cardinal Rules of Legal Interpretation, 2d ed., 443, and cases.

The American rules and cases on the subject are not different.  *Shaw* v. *Railroad Company*, 101 U. S. 557, 565; *Todd* v. *United States*, 158 U. S. 278, 288; *Harrison* v. *Vose*, 9 How. 373, 378; 1 Wharton's Precedents, p. 28; Wharton's Crim. Plead. &c., 9th ed., § 166.

Other fatal defects appear in the indictment.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The Federal courts have not agreed as to the effect of the provision for notice and hearing found in § 4 of the Pure Food and Drug Act of June 30, 1906, 34 Stat. L. 768, c. 3915.  *United States* v. *Barrels Olives*, 179 Fed. Rep. 983.  *United States* v. *Cases of Grape Juice*, 189 Fed. Rep. 331.  Whether it confers a right upon the defendant, or results in imposing a duty upon the district attorney, can be determined by a brief examination of a few of the provisions of the act.

Under the Pure Food Law not only a manufacturer, but any dealer, shipping adulterated or misbranded goods in interstate commerce is guilty of a misdemeanor.   In aid of enforcement of the statute it is made the duty of the Department of Agriculture to collect specimens of such articles so shipped, and the Bureau of Chemistry is required to analyze them.   But, even if the specimen, on analysis, is found to be adulterated, there is no requirement that the case should be turned over at once to the district attorney, for the reason that the "party from whom the sample was obtained" might be a dealer holding a guaranty from his vendor that the articles were not adulterated.   In such case the dealer is not liable to prosecution, but the guarantor (§ 9) is made "amenable to the prosecutions, fines and other penalties."

The act, therefore, declares (§ 4) that when, on such examination by the Board of Chemistry, the article is found to be adulterated, "notice shall be given to the party from whom the sample was obtained. Any party so notified shall be given an opportunity to be heard." If it then appears that he has violated the statute, the Secretary of Agriculture is required to certify that fact, together with a copy of the analysis, to the proper district attorney, who (§ 5), *without delay*, must "institute appropriate proceedings," by indictment, or libel for condemnation, or both, as the facts may warrant.

But the act also contemplates (§ 5), that complaints may be made to the district attorney by state health officials. In that class of cases, no doubt because the state agents investigate without giving a hearing, the district attorney is not obliged to prosecute unless such state officers "shall present satisfactory evidence of such violation." But the very fact that he must do so in that event recognizes that he may begin proceedings against a defendant who has not been given a notice and an opportunity to be heard.

In providing for notice in one case, and permitting prosecutions without it in another, the statute clearly shows that there was no intent to make notice jurisdictional. This view is strengthened by the fact that it contains no reference to giving notice to anyone except "to the party from whom the sample was obtained." And if, on the hearing given him, it appears that he is a dealer holding a guaranty, the act in providing for proceedings against such guarantor contains no suggestion that a new notice shall be given him before an indictment can be submitted to the grand jury.

In cases like the present, or where foreign goods are labelled as of domestic manufacture and vice versa, no scientific examination may be necessary. But usually a chemical analysis will be required to determine whether an article is adulterated. The Bureau of Chemistry is

equipped to do that work, so that in practice most prosecutions will be based on reports made by the Department of Agriculture after notice. But the hearing is not judicial. There is no provision for compelling the presence of the party from whom the sample was received; if he voluntarily attends he is not in jeopardy; an adverse finding is not binding against him; and a decision in his favor is not an acquittal which prevents a subsequent hearing before the Department, or a trial in court.

The provision as to the hearing is administrative, creating a condition where the district attorney is compelled to prosecute without delay. When he receives the Secretary's report, he is not to make another and independent examination, but is bound to accept the finding of the Department that the goods are adulterated or misbranded, and that the party from whom they had been obtained held no guaranty. But the fact that the statute compels him to act in one case, does not deprive him of the power voluntarily to proceed in that and every other case under his general powers. If, for any reason, the executive department failed to report violations of this law its neglect would leave untouched the duty of the district attorney to prosecute "all delinquents for crimes and offenses cognizable under the authority of the United States." Rev. Stats., §§ 771, 1022. So, an improper finding by the Department would no more stay the grand jury than an order of discharge by a committing magistrate after an ordinary preliminary trial. For the statute contains no expression indicating an intention to withdraw offenses under this act from the general powers of the grand jury, who are diligently to inquire and true presentment make of all matters called to their attention by the court, or that may come to their knowledge during the then present service.

Repeals by implication are not favored, and there is certainly no presumption that a law passed in the inter-

est of the public health was to hamper district attorneys, curtail the powers of grand juries or make them, with evidence in hand, halt in their investigation and await the action of the Department. To graft such an exception upon the criminal law would require a clear and unambiguous expression of the legislative will.

It was argued that the privilege of a preliminary hearing was granted so as to prevent malicious prosecutions. But, had such been its intention, the statute would have required that a hearing should be given to all persons charged with a violation of the act, and not merely to those from whom the sample was received. A further answer is, that as to this and every other offense the Fourth Amendment furnishes the citizen the nearest practicable safeguard against malicious accusations. He cannot be tried on an Information unless it is supported by the oath of some one having knowledge of facts showing the existence of probable cause. Nor can an indictment be found until after an examination of witnesses, under oath, by grand jurors,—the chosen instruments of the law to protect the citizen against unfounded prosecutions, whether they be instituted by the Government or prompted by private malice. There is nothing in the nature of the offense under the Pure Food Law, or in the language of the statute, which indicates that Congress intended to grant violators of this act a conditional immunity from prosecution, or to confer upon them a privilege not given every other person charged with a crime. The judgment is

*Reversed.*