### MASSEI v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2151.

1. **Intoxicating liquors ☜134—Seller of extract for beverage purposes held subject to prosecution for unlawful sale of liquor.**

The seller of an extract consisting of 50 per cent. alcohol, under circumstances from which he could reasonably infer that it was intended to be used as a beverage, is subject to prosecution for unlawful sale of intoxicating liquor.

2. **Criminal law ☜393(2)—Searches and seizures ☜7—Invoices of goods bought by defendant held admissible in evidence.**

Admission in evidence of invoices of goods bought by defendant, voluntarily furnished by him to a prohibition agent on request before his arrest, *held* not a violation of his constitutional rights because he was not warned that they might be so used.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

Criminal prosecution by the United States against M. Massei, Jr. Judgment of conviction, and defendant brings error. Affirmed.

Robert H. Talley and John P. Flanagan, both of Richmond, Va., for plaintiff in error.

Paul W. Kear, U. S. Atty., of Norfolk, Va. (Lester S. Parsons, Asst. U. S. Atty., of Norfolk, Va., on the brief), for the United States.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. [1] The plaintiff in error was defendant below and will be so styled here. He conducted a store for the sale of cigars, soft drinks, and flavoring extracts. He was convicted of

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

selling some of the last named, containing more than one-half of 1 per cent. of alcohol per volume, under circumstances from which he might reasonably have deduced that the purchaser intended to use the extracts for beverage purposes. There was evidence which, if believed by the jury, justified the verdict. The conclusive answer to the defendant's present claim, that it was not proved that the extracts were fit for beverage purposes, is supplied by the testimony of one of the purchasers, who swore that he paid 50 cents for the extract because that would give him a good drunk, while it would cost $1.50 to get enough corn liquor to bring about that same longed-for result. It was proved that 50 per cent. of the liquid was alcohol, so that it was "intoxicating liquor" within the meaning of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½ et seq.). When the defendant sold it under circumstances from which he could reasonably deduce that the purchaser intended to use it for beverage purposes, he committed the offense of selling intoxicating liquor for such purposes, precisely as he would have done, had it been whisky, gin, or brandy, and was equally liable to imprisonment as a punishment therefor. He was found guilty of selling intoxicating liquor, and not of another offense, for which no specific penalty was imposed by the act.

Sections 4 and 5 of the statute do not make a hearing before the Commissioner of Internal Revenue a condition precedent to a prosecution for selling extracts for beverage purposes. The Supreme Court negatived a like contention as to similar provisions of the Food and Drug Act (Comp. St. §§ 8717–8728). U. S. v. Morgan, 222 U. S. 274, 32 Sup. Ct. 81, 56 L. Ed. 198.

[2] The defendant took the stand on his own behalf. In the course of his cross-examination as to the extent of his dealings in extracts, the government produced certain bills and statements for extracts purchased by him, and upon his identification of them they were offered in evidence and over his objection, received. Before his arrest a government prohibition agent had gone to his place of business and told him he was seeking information as to the amount of extracts purchased and handled by the defendant, and for that purpose, and at his request, the defendant gave him the bills and statements in question. Defendant's zealous counsel now argues that to permit the government to put them in evidence was to deny to him the protection of the Fourth and Fifth Amendments. But there was no search; there was no seizure. If it be of any importance, the bills and statements were used for the very purpose for which he had voluntarily surrendered them, viz. to aid in checking the extent of his purchases and sales of extracts. The only conceivable interest the government official could have had in the papers was the possibility that they might throw light upon a violation of law by some one, the defendant or another. All that he complains of now is that he was not expressly warned that they might be used against him. There is no rigid rule of law requiring such a warning, even had the defendant been under arrest at the time, as he was not.

Affirmed.