**SECURITIES AND EXCHANGE COMMISSION v. STOCK MARKET FINANCE, Inc., et al.**

**SAME v. ROBERT COLLIER & CO. et al.**

District Court, S. D. New York.
Feb. 14, 1935.

John J. Burns, Gen. Counsel, of Washington, D. C. (John T. Callahan, and Edwin Martenet, of New York City, of counsel), for Securities and Exchange Commission.

Abraham C. Berman, of New York City, for Stock Market Finance and Thomas J. Murphy.

Glass & Lynch, of New York City, for John J. Hackett.

Thomas E. Dewey, of New York City, for respondents.

CAFFEY, District Judge.

The suits seek to enjoin alleged violations of the Securities Act of 1933, 15 USCA §§ 77a to 77aa. (hereinafter called the Act of 1933), or the Securities Exchange Act of 1934, 15 USCA §§ 77b–77e, 77j, 77k, 77m, 77o, 77s, 78a to 78 jj (hereinafter called the Act of 1934). The bill in the first case was brought by the Federal Trade Commission as complainant, pursuant to the power conferred on it by sections 2 (5) and 20 (b) of the Act of 1933, 15 USCA § 77b (5) and § 77t (b). It was later amended so as to proceed in the name of the Securities and Exchange Commission as complainant, in conformity with section 210 of the Act of 1934 (15 USCA § 78ii). The bill in the second case was brought by the Securities and Exchange Commission in its own name as complainant, pursuant to section 21 (e) of the Act of 1934, 15 USCA § 78u (e).

Certain of the defendants have moved to dismiss the bills on the ground, in substance, that the complainant appears only by solicitors of its own selection, and not either by the United States Attorney for the Southern District of New York or. by the Attorney General or any officer or attorney designated by him.

When the first suit was commenced, on or about August 17, 1934, I called the attention of the complainant's solicitor, and the next day after I had examined the bill in the second suit, on January 24, 1935, I called the attention of two of the complainant's solicitors, to the question now raised by the motions, namely, whether the suits could proceed unless the United States Attorney came into this court on behalf of the complainant. At the argument of the motions on February 1, the complainant took, and in its brief still takes, the position that it is entitled to be represented exclusively by its own attorneys; that the law empowers it to maintain the suits without regard to the United States Attorney and without regard to the Attorney General or any one acting under him. ' It rests entirely on the claimed right to prosecute the cases at bar without. the presence in them of the United States Attorney or any other member of the Department of Justice. Thus a square determination of the issue presented is unavoidable. Indeed, as I understand, the complainant seeks it.

Section 35 of the Act of September 24, 1789, makes it the duty of the United States Attorney, in his district, "to prosecute * * * all civil actions in which the United States shall be concerned." 1 Stat. 92. This statute still survives. The sole alteration to date in the quoted phrase is the substitution of "are" for "shall be" in the closing words. 28 USCA § 485.

The Attorney General himself is authorized, or, when he so directs, any officer of the Department of Justice or any attorney specially appointed by him under any provision of law is authorized, to conduct such actions (5 USCA §§ 309, 310). Inasmuch, however, as the Attorney General has not intervened in these suits, we need concern ourselves only with what is defined as the function of the United States Attorney.

It is conceded—and if it were not conceded, it is manifest—that the suits are civil actions; also that the United States are concerned in them. It follows that appearance in them by the United States Attorney is essential to their being entertained by the court unless the Act of 1789 has been changed. This has been unambiguously

ruled by the Circuit Court of Appeals for this circuit in Sutherland v. International Ins. Co. of New York, 43 F.(2d) 969. I am bound by that decision. It would be supererogation to add to what was there said. Accordingly, we are reduced to the single inquiry: Has the Act of 1789, in the respect here involved, been changed by the Act of 1933 or by the Act of 1934 or by any other statute?

The sole contention of the complainant is that section 20 (b) of the Act of 1933, or that section as amended or continued by section 21 (e) of the Act of 1934, empowers the complainant to institute and carry on injunction suits through its own attorneys. The pertinent portions of the two sections are identical. It will be enough, therefore, to examine the Act of 1934. I have discovered no other statute, and my attention has not been directed to any other statute, having a bearing on the subject.

Section 21 (e) of the Act of 1934 (15 USCA § 78u (e) provides as follows: "Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this title [chapter], * * * it may in its discretion bring an action in the proper district court of the United States, * * * to enjoin such acts or practices."

The complainant says that unless it may act exclusively through its own attorneys—whom it is authorized by section 4 (b), 15 USCA § 78d (b), to appoint—its discretion would be nullified. Otherwise put, the complainant insists that if it had to transmit to the United States Attorney for handling a suit which it wants to bring, he might be unwilling to act as it desires and so its purpose would be frustrated.

The difficulty I find with the argument, as stated, is that it anticipates refusal by an official in the law enforcement branch of the government to perform his duty. Not only is the premise of the complainant mere assertion; its begs the question.

Let us assume, as the complainant assumes, that by "discretion," as employed in section 21 (e), Congress intended to confer on the complainant unlimited power of decision as to whether a suit should be commenced, and thus to deprive the United States Attorney of any right to refrain from commencing a suit when requested by the complainant. If so, then clearly the Act of 1789 imposes on that official the obligation to prosecute the action. In event of his failure to discharge the duty, the remedy is by appropriate complaint of his dereliction. It does not follow that because he is unwilling to perform his duty, thereupon there arises a power on the part of the complainant to proceed in its own way or by agents of its own choosing.

It is to be observed that what the Act of 1789 does is to impose a "duty" on the United States Attorney. He is subject to removal by the President or to impeachment by the Senate. If by disregard of that duty he so offend as to merit removal or impeachment, infliction of such punishment would seem to be the orderly method of ultimately securing obedience.

■ To construe a mere grant to a governmental agency of power to bring an action as arming it with authority wholly to displace the previously existing government official designated by statute to prosecute that action seems to me, therefore, completely without warrant. "To graft such an exception" on the Act of 1789 "would require a clear and unambiguous expression of the legislative will" (United States v. Morgan, 222 U. S. 274, at page 282, 32 S. Ct. 81, 82, 56 L. Ed. 198) ; and I find no such expression here.

Even though, however, the position taken by the complainant may not properly be so severely characterized as begging the question, I think at least the alternative implication, that there is found in the statute, defining its own powers, an authorization to prosecute actions through attorneys of its own choice, is not borne out by the language employed.

In the first place, if section 21 (e) be taken to mean that capacity to sue in its own name, instead of its being required that suits be in the name of the United States, is conferred in the instances dealt with, then the language as used is given a rational, and I feel a full, field of operation.

In the second place, it seems to me that the proper significance to be attributed to "discretion" is allowance to the Commission by Congress of a free hand in deciding what violations of the statute it should ask a court to enjoin; that is to say, that the Commission is not to deem itself under mandatory command by Congress to prosecute every violation it discovers, regardless of how petty it is.

In the third place, in so important a matter as the prosecution of injunction

suits, if Congress had intended so radical a departure from the system of government litigation, which had prevailed for more than one hundred and forty years, as would ensue from shifting it into the hands of lawyers for the Commission itself, it seems to me wholly unlikely that it would have failed to express itself to that end in a way that could not be misunderstood. Here, at best, it requires a good deal of surmise to attribute to the lawmakers a design to bring about so emphatic a change as that which the complainant insists it did make.

In the fourth place, the clause of the statute dealing with attorneys should be considered.

Section 4 (b) of the Act of 1934, 15 US CA § 78d (b), provides that: "The Commission is authorized to appoint and fix the compensation of such * * * attorneys, * * * as may be necessary for carrying out its functions under this act [chapter], without regard to the provisions of other laws applicable to the employment and compensation of officers and employees of the United States."

Had it been the purpose of Congress to supersede the Act of 1789 with respect to the duties of United States Attorneys throughout the country, it is remarkable that in its specification of other laws to be pro tanto abrogated, it should have confined itself to those "applicable to the employment and compensation" of such attorneys engaged by the Commission as it might deem "necessary for carrying out its functions." If there had been such purpose, it is strange that there should have been complete omission of reference to the laws which, so long as they stood unrepealed or unamended, disqualified those very attorneys from prosecuting governmental civil actions. A more natural meaning to be ascribed to the words is that they were designed to free the Commission, in selecting attorneys, from restrictions contained in the civil service laws, as well as from laws fixing rates of pay generally for attorneys in the government service.

If a different conclusion were adopted than that which I have reached, as I see it, there would be obvious departure from the universal reluctance to imply repeals of old statutes from mere general or vague expressions found in later statutes.

The complainant also relies on the second sentence of section 21 (e). The Commission is there told by Congress that it may transmit to the Attorney General available evidence concerning acts and practices which violate the statute, and the Attorney General is told that he "may, in his discretion, institute the necessary criminal proceedings under this title [chapter]." It is urged that, because the criminal complaints are directed to be sent to the Attorney General, it follows that Congress meant to arm the Commission with power to conduct proceedings on civil complaints. I think such an inference would be a complete non sequitur. Why it should be drawn has not been pointed out. If the law had already for more than a century required civil actions to be prosecuted by the United States Attorneys, I fail to grasp the need for reaffirming the fact in order to escape depriving them of that function. That there were conferred on the Commission and on the Attorney General new discretionary functions with respect to criminal proceedings plainly cannot diminish, much less destroy, the pre-existing authority of United States Attorneys with respect to noncriminal proceedings. Cf. United States v. Morgan, 222 U. S. 274, 32 S. Ct. 81, 56 L. Ed. 198.

The complainant further urges, as I understand, that under similar grants of power the Interstate Commerce Commission and the Federal Trade Commission have been represented in court by their own attorneys. It is suggested that, in harmony with the practice, where ambiguities exist, of giving weight to the interpretation of statutes by executives to whom they are committed for administration (cf. New York Central S. Corp. v. United States, 287 U. S. 12, 24, 53 S. Ct. 45, 77 L. Ed. 138), it should be held that Congress intended to tell the complainant that it could do what had theretofore been done by the two government agencies mentioned.

I think there are several answers to the argument advanced, any one of which is sufficient. I shall content myself with stating a few.

On the fact side, complainant's counsel have attached to one of their briefs lists of cases, aggregating 75 in number, running over the years from 1911 to 1934, in which the Interstate Commerce Commission or the Federal Trade Commission was concerned. Of these, 16 were in the Supreme Court of the District of Columbia, 42 were in the Court of Appeals of the District of Columbia, and 17 were in the Circuit Court of Appeals for the Second Circuit. In 38 the Interstate Commerce Commission was a

party, and in 37 the Federal Trade Commission was a party.

Assuming that the language employed in the statutes with respect to these two commissions is the same as that used in the Act of 1934 now under consideration, and assuming also that we may resort to the action of the commissions for help in determining whether the Act of 1934 effected a modification or repeal of a statute governing performance of their duties by United States Attorneys, yet the appearance by the commissions through their own attorneys for 75 times only in 23 years impresses me as far from sufficient to show such a uniformity of executive conduct over a long period as substantially to aid the court in resolving a statutory ambiguity. Non constat, there were court appearances by the two commissions through United States Attorneys or other members of the Department of Justice in several times as many as 75 cases.

In no instance furnished by the complainant is enough stated with respect to the cases scheduled to enable one to discover with accuracy the real nature of the issues involved or to say with certainty whether, in the sense of the Act of 1789, any of those cases come within the class of prosecutions of civil actions in which the United States are concerned.

Paragraph (20) of section 1 and paragraph (2) of section 12 of the Interstate Commerce Act authorize suits there described by the Interstate Commerce Commission (49 USCA § 1 (20) and 12 (2). What, however, is the language employed in the provision of law covered in the particular cases scheduled, to which the Interstate Commerce Commission was a party, is not identified. Moreover, and what is of greater consequence, if that language be the same or in essence the same as that used in section 21 (e) of the Act of 1934, it is to be noted that paragraph (11) of section 16 of the Interstate Commerce Act expressly authorizes attorneys employed by it "to appear for or represent the commission in any case in court" (49 USCA § 16 (11). It is to be noted also—at least in so far as I have discovered in going over this elaborate statute —that, save only to the extent otherwise provided by paragraph (11) of section 16 of the Interstate Commerce Act, it is required by paragraph (1) of section 12 (49 USCA § 12 (1) that, upon the request of the commission, United States Attorneys shall conduct "all necessary proceedings for

the enforcement" of the Interstate Commerce Act.

So far, therefore, from anything contained in the Interstate Commerce Act lending support to the complainant, it seems to me that the opposite is true.

In the list of 37 cases to which the Federal Trade Commission was a party, it was a defendant in the 11 which were brought in the Supreme Court of the District of Columbia. What happened in the 11, therefore, cannot affect the capacity of the Commission as plaintiff to prosecute suits for injunctions or be of use here with respect to injunction suits by the complainant.

The remaining 26 cases in which the Federal Trade Commission was engaged— of which 9 were in the Court of Appeals for the District of Columbia and 17 were in the Circuit Court of Appeals for the Second Circuit—were either mere reviews of or applications for the enforcement of cease and desist orders, pursuant to section 5 of the Federal Trade Commission Act as amended (15 USCA § 45). It is impossible to ascertain from the material in hand what was the nature of any particular case. Whatever the nature, however, it would seem clear that proceedings entertained by an appellate court cannot be taken as an interpretation, or even as having a bearing upon the interpretation, of the duty of United States Attorneys in regard to the prosecution of government civil litigation in the district courts.

With respect to none of the language used in the Act of 1934 is it shown that there has been such uniform interpretation of similar words by any administrative branch of the government as to afford support for the supposition that Congress accepted it as fixing the meaning or to remove from this court the responsibility, as best it can, of ascertaining the meaning of the statute now under review. Cf. Piedmont & N. R. Co. v. Interstate Commerce Commission, 286 U. S. 299, 312, 52 S. Ct. 541, 76 L. Ed. 1115.

There are also facts of general knowledge, having a practical bearing upon proceedings in the District Courts of the United States, which, as it seems to me, tend to confirm the conclusion I have reached. It is frequently essential in civil suits to apply for orders on notice. I take it as true that organizations of which the complainant is a type have local offices in few of the judicial districts. In those instances where there is no local office in a district, if a defendant desired to serve notice of a motion

on complainant's attorney of record, where the organization appeared only by its own attorney, either waiver of personal service or a trip to Washington would be necessary —if that be the place, as I assume it would usually be, where the attorneys for these organizations are located. On the other hand, as there is a United States Attorney in each district, service could be made expeditiously if he were required to be the attorney of record. I can well believe that Congress would have been reluctant to compel those sought to be enjoined for alleged infractions of the Acts of 1933 and 1934 to suffer the delay and expense of having to give notice to opposing attorneys so far away from the seats of litigation as Washington.

I feel impelled, therefore, to grant the motions to dismiss the bills to the extent and in the form approved in the Sutherland Case (C. C. A.) supra, at page 972 of 43 F.(2d).

Settle order accordingly on three days' notice.