**HART COAL CORPORATION et al. v.
SPARKS, U. S. Atty.**

District Court, W. D. Kentucky.
Feb. 27, 1935.

J. V. Norman, A. C. VanWinkle, and VanWinkle & Skaggs, all of Louisville, Ky., for plaintiffs.

Thos. J. Sparks, U. S. Atty., of Louisville, Ky., Gregory Hankin, Sp. Asst. to U. S. Atty., of Washington, D. C., and William F. Farrell, Sp. Asst. to U. S. Atty., of New York City, for defendant.

DAWSON, District Judge.

This case is before me on motion of the plaintiffs for a preliminary injunction. Heretofore, on May 16, 1934, I granted a preliminary injunction, enjoining the defendant, Sparks, "pending further order and decree of the court from initiating any prosecution or other action to enforce the penalties attempted to be authorized by the National Industrial Recovery Act for violation by the plaintiffs, or any of them, of the order of Hugh S. Johnson, as National Administrator, dated March 31, 1934, and the further amended and modified order of said Johnson, as National Administrator, dated April 22, 1934, both of same purporting to be amendments to and supplements of the Code of Fair Competition for the Bituminous Coal Industry, attempted to be promulgated under the provisions of the National Industrial Recovery Act."

At the time this preliminary injunction was granted, I delivered a written opinion, holding that the National Industrial Recovery Act § 1 et seq. (15 USCA § 701 et seq.), as construed by those charged with its enforcement and as applied to the business of mining coal, particularly as to wages and hours of service in the business of mining coal, was beyond the power of the National Government, under the Constitution of the United States; and that the orders complained of in this proceeding, dated March 31, 1934, and April 22, 1934, respectively, purporting to have been promulgated under the authority of the National Industrial Re-

covery Act, dealt with matters beyond the competency of the National Government. That opinion is a part of the record in this case and is reported in 7 F. Supp. 16.

The bill attacks these orders on three grounds:

(1) That the National Government has no constitutional power to regulate wages and hours of service in coal mining.

(2) That even if Congress possesses such power, the National Industrial Recovery Act is unconstitutional, in that it improperly delegates legislative power to the President.

(3) That irrespective of its unconstitutionality, the orders complained of are arbitrary and capricious.

■ At the very inception of this case I announced that, in the absence of the Administrator for National Recovery, I had no jurisdiction or power to consider the last ground of attack above referred to, and that I would not do so; and therefore this case has been tried and considered by me as involving solely the questions embraced in the first two grounds of attack above enumerated. I adhere to my first conclusion that I have no jurisdiction to consider the third ground of attack. I have not required the striking of those allegations of the petition which deal with this ground of attack, nor of the statements contained in the affidavits dealing therewith, because of the unnecessary labor which would have been involved in reforming the pleadings and the affidavits.

On appeal to the Circuit Court of Appeals [74 F.(2d) 697, 700] from my order granting the preliminary injunction, that court vacated the preliminary injunction and sent the case back, with directions, as I understand the opinion, to make findings of fact on the question of irreparable injury, but "without prejudice to the right of the plaintiffs to resubmit their petition for temporary restraining order to the discretion of the District Judge pending further proceedings, or to the rights of the litigants to amend pleadings or amplify proofs." With reference to the necessity for findings of fact, the Circuit Court of Appeals said: "The bill here considered states grounds for injunctive relief in its allegations of irreparable injury to the business of the plaintiffs if they comply with the challenged orders, and in the heavy penalties they will incur if they do not. But these allegations are denied by the answer and supporting affidavits, and the fact of injury, either suffered or imminent, is neither found by the District Judge nor sufficiently obvious on the present record to warrant us in such finding, especially in view of the contention that the wage and hour scale is but a part of a stabilizing program which includes also the stabilization of prices of the plaintiffs' product. In such situation an appellate court should be adequately advised of the factual basis of the decision below, as well as of its legal basis."

■ In justification and explanation of my action in granting the former preliminary injunction in this case without a specific finding of irreparable injury, I think it is necessary to have a clear understanding of the matter in controversy. The bill asserts a right on the part of the plaintiffs to conduct their business free from unconstitutional interference by the National Government. This is a property right; and if, as a result of such unconstitutional interference, the plaintiffs would be required to pay out money which otherwise they would not pay out, undoubtedly, in a legal sense, they would sustain injury to the extent of the money thus paid out. If this money once paid out cannot be recovered, the injury is irreparable. The plaintiffs appealed to this court to protect them against this threatened irreparable injury, showing that they could not safely protect themselves by refusing to comply with the orders complained of, because of the impending danger of prosecutions to inflict upon them the recurring penalties provided for in the National Industrial Recovery Act for a violation of its terms and of Codes of Fair Competition promulgated under it.

The bill shows that the wages required to be paid under the orders complained of are in excess of the wages the plaintiffs have been paying and are willing to pay, and this was not denied and could not be denied, either in the answer or in the affidavits filed by the defendant. Therefore, bearing in mind that the matter in controversy is the right of the plaintiffs to do business without being required to pay these increased wages, there cannot possibly be any doubt that the record itself indubitably discloses that irreparable injury will be suffered by the plaintiffs if they comply with the orders complained of, if these orders are unconstitutional. This is necessarily true, because there would be no implied obligation on the part of the employees receiving the increased wages to repay same in event the orders

complained of should be held unconstitutional. Furthermore, were it possible to spell out of the situation any such implied obligation on the part of the employees, a multiplicity of suits would be required to recover the wages, which, of itself, would present a ground for equitable relief.

Counsel for the defendant insist that the opinion of the Circuit Court of Appeals contemplates that in determining the question of injury or damage sustained by the plaintiffs, I must take into consideration the benefits in the way of increased prices and the greater stabilization of their business which, it is claimed, would result from complying with the Code for the Bituminous Coal Industry and with the orders complained of; and that if, from such a survey, it should be determined that the plaintiffs would sustain no greater loss in the operation of their business under the orders complained of than they would sustain if operating without the alleged benefits of the Code, then I must find that the plaintiffs have sustained no injury. I am thoroughly satisfied that such is not the legal test in this character of case, and I cannot believe that the Circuit Court of Appeals intended any such construction to be given to its opinion. The slightest consideration, it seems to me, will demonstrate the fallacy of defendant's contention. The citizens of this country have the right to conduct their business without unconstitutional interference or regulation by governmental authority. Whenever the government unconstitutionally interferes with the right of a citizen to do business in his own way, that interference constitutes an injury to the property rights of the citizen. If that interference takes the form of exacting the payment of wages in excess of what the citizen is willing to pay, to the extent of the increased wages this citizen has been injured in his property rights. Surely, in such a situation the government cannot justify its action by demonstrating that the increased wages are more than absorbed by increased profits flowing to the citizen as the result of operating his business under the illegal regulation thereof by the government. If such is the law, then a benevolent despotism at Washington can take charge of all business in this country, regulating wages and hours of service and all the other elements thereof, and the citizen would have no redress unless he could demonstrate that operation under government supervision would result in a loss to him which otherwise would not have been sustained.

In considering this contention of the defendant, it must be borne in mind that the question here presented is a very different one from that presented in rate regulation cases and other kindred controversies. When a public utility attacks a rate structure prescribed by the proper authority, there is involved no question of power to prescribe rates. The existence of such a power is admitted, its only limitation being that the rates prescribed must not be so low as to amount to confiscation of the business of the complaining utility; and that is determined by ascertaining if the prudent operation of the business under the rates complained of will fail to produce a reasonable return upon the fair value of the property used and useful in the public service rendered by the utility. The same situation is presented when a tax on business, levied by competent authority, is attacked as being confiscatory. The test of whether such a tax is confiscatory is whether the tax is so heavy as to destroy the profits of the business. Unlike such cases, however, in this case the power to regulate and to fix wages is not admitted, and, if it does not exist, the benefits resulting from such regulation cannot be offset against the specific injury complained of. Therefore, I do not feel called upon to determine the net result of the operation of the business of plaintiffs under the orders complained of and under the other provisions of the Code.

The bill in this case sufficiently alleges that the sum or value of the matter in controversy as to each of the plaintiffs is in excess of $3,000, exclusive of interest and costs, and this was not denied in the original answer. Therefore, on the former hearing for a preliminary injunction there was no issue of fact presented on this question. Since the return of the case to this court an amended answer has been filed, adopting and elaborating the allegations and denials of the original answer, specifically denying the allegations in the bill of jurisdictional amount, and also denying that this is a suit arising under a law regulating commerce within the meaning of subdivision 8 of section 24 of the Judicial Code, section 41 (8), 28 USCA, as alleged in the bill. The amended answer also challenges the jurisdiction of the court because of the failure of the plaintiffs to exhaust their administrative remedies, and also their right to maintain the action as a class suit; and, on argument, it was further contended that this suit is in reality a suit against the United

States, inasmuch as the defendant, Sparks, is sued in his capacity as United States Attorney, and therefore, the United States not having consented to be sued, the action cannot be maintained. All of these contentions were vigorously urged on argument in support of the defendant's motion to dismiss.

■ The claim that this is a suit against the United States is so utterly without merit as to call for little, if any, attention. It is plain from the bill as a whole that the plaintiffs are contending that under color of office the District Attorney will, by criminal prosecutions, attempt to enforce the penalties provided in the National Industrial Recovery Act for failure of the plaintiffs to comply with the alleged unconstitutional orders. If the orders are unconstitutional, the defendant, in any attempt to enforce the penalties, would stand stripped of all constitutional sanction as an officer, and would be acting as an individual. The authorities all agree that in such a situation the suit is not one against the sovereign.

■■ I have no doubt of the right of all the plaintiffs to join themselves as such under Equity Rule 37 (28 USCA § 723), which authorizes all persons having an interest in the subject-matter of the action, and in obtaining the relief demanded, to join as plaintiffs, provided the jurisdictional amount is shown as to each. In a suit brought by several plaintiffs under this rule, even should it appear that the jurisdictional amount does not exist as to some of the plaintiffs, jurisdiction would not be defeated as to those plaintiffs showing the requisite jurisdictional amount.

■ Furthermore, on mature consideration, I am of the opinion that this action is one which can be maintained as a class action under Equity Rule 38 (28 USCA § 723), which provides that "when the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole." I do not think, however, it is that character of class action in which the jurisdictional amount is determined by the aggregate interest of those who join in the suit. The separate interest of one or more of the parties plaintiff must be of the jurisdictional amount, in which event it seems to me the relief granted should inure to the benefit of all. The question, however, of whether this can be maintained as a class action is of relatively slight importance, as under my view of the case the amount involved as to each of the plaintiffs, with the exceptions hereafter to be noted, is in excess of $3,000, exclusive of interest and costs. The jurisdictional amount as to each plaintiff is determined by the value of the right of each plaintiff to conduct its business without unconstitutional regulation of wages and hours of service, and this value must be determined as of the date the petition was filed. While the value of this right may be much in excess of the additional wages the plaintiffs would be required to pay under the orders complained of, these additional wages are certainly a part of the injury sustained by plaintiffs, if the orders are unconstitutional. The record clearly shows that compliance with the orders complained of would increase the cost of mining coal to each plaintiff by not less than eight and one-half cents per ton, and the supplemental affidavit of C. E. Reed, filed on February 25, 1935, shows that on the basis of the tonnage produced by the respective plaintiffs from April 1, 1934, the effective date of the orders complained of, to February 1, 1935, the orders complained of would have required each of the plaintiffs, except Kentucky Derby Coal Company, Low Vein Coal Company, Newcoal Company, Southland Coal Company, Wevirco Coal Company, Young & Morgan Coal Company, and Zion Coal Company, to pay out in excess of $3,000 in additional wages during the life of the orders.

It has been urged upon me that the amount in controversy as to each plaintiff for jurisdictional purposes is the amount each would be required to pay under the order under attack from the date of this hearing until April 1, 1935, when the order by its terms expires. This contention, however, confuses the question of irreparable injury, to avoid which this injunction is sought, with that of jurisdiction. Of course, to entitle plaintiffs to a preliminary injunction, they must show at the time the injunction is applied for that they are threatened with future injury; but the jurisdictional amount is not determined in a case such as this by the situation which exists at the time the injunction is applied for, but by the situation as it existed at the time the bill was filed.

■ In view of my conclusion that this court has jurisdiction by virtue of the fact that the value of the matter in controversy exceeds $3,000, exclusive of interest and costs, it is really unnecessary to determine if the court has jurisdiction of the action as

one arising under a law regulating commerce within the meaning of subdivision 8 of section 24 of the Judicial Code, section 41, subdivision 8, 28 USCA. However, I have no hesitation in holding that jurisdiction cannot be predicated upon this provision. To confer jurisdiction under this provision of the Judicial Code, it must appear that the plaintiffs are asserting some right arising under a law regulating commerce. In this case, in so far as I have jurisdiction to consider the causes of action set up in the bill, the plaintiffs claim no right under the National Industrial Recovery Act, which, undoubtedly, is a law attempting to regulate plaintiffs' business as affecting interstate commerce. They reject the law as being an unconstitutional attempt to regulate matters that are not interstate commerce. No rights are claimed under the act at all. It would seem axiomatic, therefore, that plaintiffs' suit, in so far as I have the power to consider it, is not one arising under the National Industrial Recovery Act.

The contention of the defendant that plaintiffs are not entitled to resort to this court because they have not exhausted their administrative remedies, is without merit. Of course, it is well settled that where no question is made of the power of an administrative body to deal with the subject-matter of the controversy, but the complaint is that the administrative body improperly exercised such authority, the administrative methods provided for review of the action complained of must be first exhausted before the judiciary can be appealed to. Where the complaint is not of such a character, but is that the administrative authority has no power to act with reference to the subject-matter of the controversy at all, the question is a judicial one, which can be determined only by the courts. The question here is of the constitutional power of the National Government to deal with the subject of hours and wages in coal mining, and I know of no tribunal under our system of laws empowered to pass upon this question except the courts.

In a final attempt to avoid a judicial determination of the questions here involved, the defendant, through his counsel, insists that even though irreparable injury is shown, this court is powerless to give protection to the plaintiffs unless it is also shown that the defendant, Sparks, has threatened to prosecute them if they fail to comply with the complained of order. I do not understand such to be the law.

When the bill was filed there were open to the plaintiffs only three courses of action:

(1) They might comply with the order without any hope of ever recovering the additional wages required to be paid. Legally, this would result in irreparable injury to them if the order is unconstitutional.

(2) They might disregard the order and take a chance of having inflicted upon them the heavy and recurring penalties provided for in the National Industrial Recovery Act.

(3) They could show to a court of equity the irreparable injury they would sustain from compliance with the order, and the imminent hazard of penalties which they would incur from noncompliance, and ask the court, in view of such a situation, to protect them in their noncompliance while their constitutional rights were being judicially determined. In such a case, if the court should be satisfied of the unconstitutionality of the order complained of on the showing made, and should be further satisfied from an examination of the applicable law that noncompliance would subject the plaintiffs to imminent danger of large and recurring penalties, and that it is within the power and the duty of the defendant, as a public official, to institute criminal proceedings to inflict such penalties, it would be the duty of the court to grant a preliminary injunction; and all this abundantly appears from the record.

The National Industrial Recovery Act § 3 (f), 15 USCA § 703 (f), provides a penalty of $500 for violating any of the provisions of a Code of Fair Competition promulgated under its provisions, and each day such violation continues is declared to be a separate offense. Section 485 of title 28 USCA makes it the duty of every District Attorney to prosecute in his district all delinquents for crimes and offenses cognizable under the authority of the United States. If the National Industrial Recovery Act is constitutional, then any violation of the provisions of a Code of Fair Competition promulgated under it is an offense against the laws of the United States, and it would be the duty of the District Attorney to prosecute such offenses. Of course, if the District Attorney should be of the opinion that the National Industrial Recovery Act is unconstitutional, inasmuch as he is under an oath to support and defend the Constitution of the United States, he would not be required to prosecute under 28 USCA § 485; but the District Attorney, through the mouth

of his counsel and by his answer in this case, is strenuously insisting that the National Industrial Recovery Act, as applied to the plaintiffs by the authorities charged with its enforcement, is constitutional. To hold in such a situation that the plaintiffs would not be confronted with imminent danger of prosecution, should they violate the terms of the orders here involved, would imply that the defendant would stultify himself and be remiss in his sworn official duty. To avoid the force of this reasoning, and to repel the claim of the plaintiffs that they would be in imminent danger of the infliction of recurring penalties should they violate the orders, the defendant in paragraph 12 of his original answer denies "that there has been any *actual* threat by defendant of enforcement against plaintiffs, or any of them, of any penalty provided by any law"; and in paragraph 3 of his amended answer the defendant says "that he has never threatened in any form or manner and that he has no knowledge of any threats having been made by any person to enforce the order promulgated by Hugh S. Johnson as Administrator for Industrial Recovery on March 31, 1934, supplemented by the order of April 22, 1934, as is alleged in Paragraph III of the complaint"; and in his affidavit he likewise denies that he has ever made any threat to prosecute any of the plaintiffs should they violate the orders complained of; but the answer, the amended answer, and the affidavit of the defendant carefully avoid disclaiming intention to prosecute the plaintiffs should they violate the orders. These statements in the answer, amended answer, and the affidavit appear to me to be an adroit effort to evade the question of the imminence of the danger to plaintiffs of prosecutions, without specifically disclaiming intention to prosecute; but in view of the perfectly frank statement by the District Attorney of his position, when questioned by the court, responsibility for this apparent evasion, I think, must be placed elsewhere than upon the District Attorney.

At the hearing on this motion I questioned the District Attorney specifically as to just what he meant by the denials referred to, and he stated that he merely meant that he had made no threats to prosecute; that he had never made a threat to prosecute any person for any violation of any law during his incumbency as District Attorney; but that it was his purpose in this matter, as in all other alleged violations of the law submitted to him, if the facts convinced him that the law was violated, to act against the plaintiffs as he would against persons charged with any other violation of law. He was then asked this specific question: "Your position in this case is that this law is constitutional, the N. R. A. Act, and but for the injunction, if the matter came up to you and you discovered, or complaint was made, that these operators, with no injunction to protect them, were paying less wages than provided in the N. R. A. and Code, you would prosecute them?" To which he answered: "I would, like I would have prosecuted any other violation of law; I think that would have been my duty as an official."

█ What reasonable man, in view of this attitude of the District Attorney, can doubt that the plaintiffs would be in imminent danger of prosecution by the defendant should they attempt to operate in violation of the orders complained of, unless protected by injunction? Counsel for the defendant seek to avoid the inescapable deduction to be drawn from this statement of the District Attorney by asserting that the District Attorney has no power to prosecute unless first so ordered to do by the Attorney General, and, as authority for this position, they rely upon the Act of Congress of March 3, 1933, as amended by the Act of March 20, 1933, found in sections 124 to 132, inclusive, of title 5 USCA, which authorizes the President to co-ordinate and consolidate executive and administrative agencies of the government; and upon section 5 of Executive Order No. 6166, issued by the President under that Act on June 10, 1933 (5 USCA § 132 note); and upon Circulars 2494 and 2614, issued by the Attorney General on November 9, 1933, and October 3, 1934, respectively, which orders have been filed as part of the record in this case. The statute, the executive order, and the two circulars of the Attorney General referred to, when properly understood, afford no support for this contention of defendant's counsel. It is true that the statute authorizes the President to co-ordinate and consolidate executive and administrative agencies of the government, and I shall accept it as proven that the President, under the statute, issued Executive Order No. 6166 (5 USCA § 132 note). Section 5 of this executive order reads as follows:

"The functions of prosecuting in the courts of the United States claims and demands by, and offenses against, the Government of the United States, and of defending claims and demands against the Government, and of supervising the work of United States attorneys, marshals, and

clerks in connection therewith, now exercised by any agency or officer, are transferred to the Department of Justice.

"As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.

"For the exercise of such of his functions as are not transferred to the Department of Justice by the foregoing two paragraphs, the Solicitor of the Treasury is transferred from the Department of Justice to the Treasury Department.

"Nothing in this section shall be construed to affect the function of any agency or officer with respect to cases at any stage prior to reference to the Department of Justice for prosecution or defense."

I do not understand that this section of the executive order in question was intended to, or that it actually does, deprive the District Attorney of his right, or relieve him of his duty, to prosecute violations of national law occurring in his district, when, in his judgment, the facts justify such prosecution, irrespective of the wishes of the Attorney General. Neither the order nor the statute under which it was promulgated expressly, or by implication, repeals section 485, title 28 USCA, which makes it the duty of the District Attorney to prosecute violations of national laws occurring in his district. The most that this order attempts to provide is that when a matter is referred to the Department of Justice for prosecution, then the Attorney General is vested with the power to determine if prosecution shall or shall not be instituted. It expressly declares, however, that its provisions shall not be construed to affect the function of any officer with respect to cases at any stage prior to reference to the Department of Justice for prosecution. Furthermore, section 130 of title 5 USCA, which is a part of the Reorganization Act of March 3, 1933, as amended March 20, 1933, provides: "Whenever the President makes an Executive order under the provisions of this chapter, such Executive order shall be submitted to the Congress while in session and shall not become effective until after the expiration of sixty calendar days after such transmission, unless Congress shall by law provide for an earlier effective date of such Executive order or orders."

I am not entirely certain that this court can take judicial notice of whether Executive Order No. 6166 was ever submitted to Congress while in session, as provided by section 130 of title 5 USCA, or of the date when it was submitted; but I do not consider this material. Long before the enactment of the Act of March 3, 1933, the Attorney General, by the provisions of section 362 of the Revised Statutes (section 317, tit. 5 USCA), was vested with the power to exercise "general superintendence and direction over the attorneys and marshals of all the districts in the United States and the Territories as to the manner of discharging their respective duties." This language, it seems to me, is as broad in its sweep as is the executive order relied upon; but it has been held not to deprive the District Attorney of the right to exercise his own judgment in the institution and conduct of criminal proceedings in his district. United States v. Morgan, 222 U. S. 274, 32 S. Ct. 81, 56 L. Ed. 198; United States v. Davis, Fed. Cas. No. 14,923. See, also, United States v. Woody (D. C.) 2 F.(2d) 262. Even should it be admitted that the executive order referred to, and the circulars issued by the Attorney General thereunder, control the discretion of the District Attorney in instituting prosecutions for violations of Codes of Fair Competition, the record abundantly shows that the District Attorney, the defendant here, places no such construction upon them. His statements made to the court, heretofore referred to, a transcript of which is filed as a part of the record herein, show that he recognizes no such limitation upon his authority, and paragraph XVI (b) of his amended answer is of like import, because there he states: "The defendant admits that he is charged by law to prosecute violations of the respective Codes under the terms of the National Industrial Recovery Act, and, under the direction of the Attorney General, to bring suits in equity to restrain violations of the Codes."

It thus appears that he recognizes himself as subject to the orders of the Attorney General only with reference to the bringing of equity actions to restrain violations of Codes of Fair Competition. The clear implication of this language is that he recognizes no such limitation on his power with reference to criminal proceedings. Therefore, assuming the executive order and the Attorney General's circulars, as construed by the defendant, to be the law, the defendant is in the attitude of proposing to proceed in a proper case in defiance of such law,

which, of course, makes him amenable to injunctive restraint as an individual intending to proceed without statutory sanction. However, even though the District Attorney recognizes that under the executive order and the circulars of the Attorney General he is without power to institute prosecutions for violations of the National Industrial Recovery Act unless authorized so to do by the Attorney General, yet, when such a prosecution is directed by the Attorney General, the defendant is the person who, under the law, is authorized to institute and conduct same in this district. In this situation, with no disclaimer on the part of the Attorney General or the District Attorney of intention to prosecute, I would not be justified in assuming that the plaintiffs are in no danger of such prosecution.

The remaining contention of defendant's counsel is that the statute, as construed, and the orders complained of, are not unconstitutional. This question has been fully covered by me in my opinion heretofore filed in this case, and I find no occasion to recede from any of the conclusions there announced.

A preliminary injunction, enjoining the defendant, Sparks, as United States Attorney, from initiating any prosecution or other action to enforce the penalties attempted to be authorized by the National Industrial Recovery Act for violations by the plaintiffs, or any of them, of the order of March 31, 1934, and the amended and modified order of April 22, 1934, both of same purporting to be amendments to and supplements of the Code of Fair Competition for the Bituminous Coal Industry, attempted to be promulgated under the provisions of the National Industrial Recovery Act, is granted. An order to this effect, and a finding of facts material to the issues here involved, will be entered.