**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

BARRY BIALEK,

     Plaintiff-Appellant,

v.

MICHAEL B. MUKASEY, United
States Attorney General; DAVID M.
MASON,[*] Federal Election
Commission Chairman, in their
official capacities,

     Defendants-Appellees.

No. 07-1284

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 07-cv-00321-WYD-PAC)**

---

Michael R. Dezsi, Fieger, Fieger, Kenney, Johnson & Giroux, P.C., Southfield,
Michigan, for the Plaintiff-Appellant.

Eric Fleisig-Greene, Attorney, Appellate Staff, Civil Division, United States
Department of Justice, Washington, D.C.; and Kevin Deeley, Federal Election
Commission, Washington, D.C. (Troy A. Eid, United States Attorney; Peter D.
Keisler, Assistant Attorney General; and Michael S. Raab, Attorney, Appellate
Staff Civil Division, United States Department of Justice, Washington, D.C. with
them on the brief), for the Defendants-Appellees.

---

     [*] David M. Mason is hereby substituted for Michael E. Toner, pursuant to
this Court's Rule 35.3.

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

**LUCERO**, Circuit Judge.

Plaintiff-appellant Barry Bialek appeals the district court's dismissal of his suit against the United States Attorney General and the Chairman of the Federal Election Commission ("FEC" or "Commission"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failing to state a claim. Bialek had sought a judgment declaring that the Federal Election Campaign Act ("FECA" or "the Act"), 2 U.S.C. §§ 431-455, bars the Attorney General from investigating or prosecuting criminal violations of campaign finance law absent a referral from four FEC commissioners. We find Bialek's reading of the statute unpersuasive and affirm the judgment of the district court.

**I**

Bialek alleges that the Attorney General, acting through the United States Department of Justice ("DOJ"), targeted him as part of a "politically motivated investigation" into criminal violations of campaign finance law. Bialek maintains that the alleged investigation, which began in November 2005, resulted from his political and financial support of the 2004 presidential campaign of former United States Senator John Edwards.

- 2 -

According to Bialek's complaint, in April 2006, the Attorney General's office summoned Bialek before a federal grand jury to testify and produce documents.[1] During the grand jury investigation, the government "attempted to coerce [Bialek] to reveal constitutionally protected activities such as the identi[t]y of the presidential candidate for whom he voted in the 2004 election." The investigation was initiated and conducted entirely by the DOJ; the FEC was not involved in the matter.

In February 2007, Bialek brought this action against both the Attorney General and the chairman of the FEC seeking a declaration that the Attorney General lacks the authority to initiate an investigation into violations of campaign finance law. Bialek claimed that Congress vested the FEC with exclusive jurisdiction to initiate both civil and criminal investigations into campaign finance law violations, and that the Attorney General may therefore pursue such violations only upon referral by a vote of four FEC commissioners. In their motions to dismiss under Rule 12(b)(6), the FEC Chairman and the Attorney General countered that the Attorney General's plenary power to prosecute criminal violations includes violations of campaign finance law.

---

[1] Bialek's legal memorandum provides a few colorful details regarding the campaign finance investigation, but of course we recount only those facts present in the appellate record. In this appeal of a dismissal pursuant to Federal Rule of Procedure 12(b)(6), our factual review begins and ends with the general allegations within Bialek's concise complaint. See Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007).

In a written order, the district court concluded that the government had the better of the two arguments and dismissed Bialek's complaint with prejudice. Bialek now appeals. We have jurisdiction to review the district court's final judgment pursuant to 28 U.S.C. § 1291.[2]

## II

"We review the district court's grant of a Rule 12(b)(6) motion de novo, accepting all well-pleaded allegations as true and viewing them in the light most favorable to the plaintiff." Lane, 495 F.3d at 1186. In this case, Bialek's claim rests on the proper scope of the Attorney General's prosecutorial authority. "Under the authority of Art. II, § 2 [of the United States Constitution], Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government." United States v. Nixon, 418 U.S. 683, 694 (1974); see also 28 U.S.C. § 516 ("Except as otherwise authorized by law, the

---

[2] At the time this appeal was submitted, Bialek had not been charged with any campaign finance crimes. In fact, at oral argument, Bialek's counsel told us that the statute of limitations had run on any possible charges related to Bialek's campaign contributions. Concerned that this concession rendered Bialek's appeal moot, we ordered supplemental briefing. See Colo. Off Highway Vehicle Coal. v. U.S. Forest Serv., 357 F.3d 1130, 1133 (10th Cir. 2004) (noting our duty to evaluate jurisdiction sua sponte). In response, Bialek informs us that "counsel . . . was incorrect." He states that some of the challenged campaign contributions were made in September 2003, and thus the statute of limitations for these contributions will not expire until September 2008. See 2 U.S.C. § 455(a) (establishing a five-year limitations period for FECA violations). Because nothing within Bialek's complaint compels the conclusion that his case is moot, we accept counsel's representation that he simply misspoke and address the appeal on its merits.

conduct of litigation in which the United States . . . is interested . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General."). But what Congress giveth, Congress may no doubt taketh away. Bialek argues that by enacting and amending the FECA, 2 U.S.C. §§ 431-455, Congress created an exception to the Attorney General's authority over criminal matters. Under this exception, Bialek urges, the Attorney General may only conduct an investigation of the sort at issue here following a formal referral from the FEC.

FECA was originally enacted in 1971 and subsequently amended several times, most relevantly in 1974, 1976, and 1979. The Act, as amended, regulates campaign finance in a number of ways, such as by capping the amounts of political contributions, regulating contributions from certain classes of entities and individuals, and imposing various disclosure and reporting requirements. See, e.g., 2 U.S.C. §§ 441a-441i, 441k. FECA imposes civil as well as criminal penalties on those who violate its provisions. § 437g(a)(6), (d)(1). The FEC, which is composed of six commissioners, three from each political party, § 437c(a)(1), has "exclusive jurisdiction with respect to civil enforcement" of FECA's provisions, § 437c(b)(1). The FEC has investigatory duties, but may also provide advisory guidance as to whether planned or present conduct violates FECA. See 2 U.S.C. § 437f; 11 C.F.R. § 112.1.

FECA establishes procedures through which the FEC investigates suspected campaign finance misdeeds. An FEC inquiry begins when the agency receives a sworn complaint alleging a violation, or the Commission otherwise ascertains in its usual course of business that an individual has run afoul of campaign finance law. § 437g(a)(1), (2). The FEC may then initiate an investigation, issue subpoenas, and seek judicial enforcement of its orders. § 437d(a), (b). If the investigation reveals probable cause to believe that a civil violation has occurred, the FEC must provide the target with notice and an opportunity to respond, § 437g(a)(3), and must hold conciliation discussions, § 437g(a)(4)(A)(i). In cases where no conciliation agreement is reached, it may file a civil enforcement suit. § 437g(a)(6)(A).

During the course of an investigation, the FEC may also find probable cause to believe that the campaign finance violation was "knowing and willful." In this event, FECA allows the FEC to refer the case to the Attorney General for criminal prosecution. § 437g(a)(5)(C). Such a referral requires the votes of four FEC commissioners.[3] Id.

_____

[3] The referral provision provides in full:

> If the Commission by an affirmative vote of 4 of its members, determines that there is probable cause to believe that a knowing and willful violation of this Act which is subject to subsection (d) of this section, or a knowing and willful violation of chapter 95 or chapter 96 of Title 26, has occurred or is about to occur, it may refer such apparent violation to the
> (continued...)

- 6 -

It is this last provision which, Bialek claims, places limits on the Attorney General's power to independently investigate and prosecute criminal violations of FECA. Because FECA establishes a mechanism through which the FEC may refer matters for criminal investigation, he reasons, this must be the only way that such investigations can commence. Bialek advances several arguments in support, primarily relying on policy considerations and snippets of the legislative history. Both the FEC and the Attorney General disagree with his reading, maintaining that the measure's plain language addresses only the authority of the FEC, and leaves undisturbed the Attorney General's well-established power to investigate and litigate all federal crimes.

At the outset, we emphasize that we cannot presume that Congress has divested the Attorney General of his prosecutorial authority absent "a clear and unambiguous expression of legislative will." United States v. Morgan, 222 U.S. 274, 281 (1911). "Repeals by implication are not favored," especially when the executive's law-enforcement powers are at issue. Id. Indeed, Bialek's argument is an analogue of one rejected by the Supreme Court nearly a century ago. In Morgan, a defendant was indicted by the federal prosecutor for selling tap water mislabeled as spring water. Id. at 277. The defendant noted that a federal food

---

[3](...continued)
> Attorney General of the United States without regard to any limitations set forth in paragraph (4)(A).

§ 437(g)(a)(5)(C).

and drug statute provided procedures by which the Department of Agriculture could find a suspected statutory violation, give notice to the violator, and only then refer the matter for criminal prosecution. Id. at 279-80. Like Bialek, the defendant argued that the administrative mechanism was the sole means by which he could be indicted; absent action by the Department of Agriculture, he maintained, the government had no basis upon which to prosecute.

Employing a rationale equally applicable here, the Court rejected this argument. It found no indication that Congress intended the law to "hamper district attorneys, curtail the powers of grand juries, or make them, with evidence in hand, halt in their investigation and await the action of the Department." Id. at 282. The Court reasoned, "[t]o graft such an exception upon the criminal law would require a clear and unambiguous expression of the legislative will." Id.

Following Morgan, our inquiry begins with the plain language of the statute. See also Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450 (2002). Section 437g(a)(5)(C), like the rest of FECA, speaks only to the power of the FEC. It requires a vote of four commissioners before the FEC may refer a matter for criminal prosecution, but this provision, by its clear terms, restricts only the FEC. Nowhere in FECA do we find a single phrase limiting the Attorney General's powers. If Congress wished all campaign finance litigation, both civil and criminal, to originate with the FEC, only a few lines of statutory text would have been required. Instead, Congress explicitly granted the FEC only "exclusive

jurisdiction with respect to <u>civil</u> enforcement" of FECA's provisions.

§ 437c(b)(1) (emphasis added). The obvious implication, uncontroverted by any words in the statute, is that the FEC and Attorney General retain concurrent jurisdiction to investigate criminal matters.[4]

One other court of appeals has considered—and rejected—the arguments that Bialek presents. In <u>United States v. International Union of Operating Engineers, Local 701</u>, 638 F.2d 1161 (9th Cir. 1979), the Ninth Circuit concluded that the Attorney General can initiate criminal investigations independently of the FEC. The court opined that "nothing in [FECA] suggests, much less clearly and ambiguously states, that action by the Department of Justice to prosecute a violation of the Act is conditioned upon prior consideration of the alleged violation by the FEC," and that "it would strain the language to imply such a condition."[5] <u>Id.</u> at 1163. Several district courts have reached the same result.

---

[4] Bialek notes that the 1976 amendments consolidated all FECA provisions in Title 2 of the United States Code, whereas previously some criminal provisions had been grouped under Title 18. He asks us to infer from this change that criminal enforcement authority has been shifted to the FEC, but we will not presume that Congress intended this purely organizational change to affect the distribution of authority between the DOJ and the FEC. <u>See</u> <u>FCC v. Pacifica Found.</u>, 438 U.S. 726, 738 (1978).

[5] Bialek points out that in the 1979 amendments, Congress revised FECA to explicitly require four commissioner votes for referral to the Attorney General, whereas the Ninth Circuit considered the previous version of the Act that allowed a majority of the Commission to refer violations without specifying a number of votes. <u>Compare</u> Pub. L. No. 93-443 at 1282, <u>and</u> Pub. L. No. 94-283, 90 Stat. 475, 484 (1976), <u>with</u> Pub. L. No. 96-187, 93 Stat. 1339, 1360 (1980). But this

(continued...)

See, e.g., <u>Marcus v. Mukasey</u>, Civ. No. 07-398 (D. Ariz., Mar. 10, 2008); <u>Beam v. Gonzales</u>, Civ. No. 07-1227, __ F. Supp. 2d __, 2008 WL 681020, at *11-12 (D. Ill. Mar. 7, 2008); <u>Fieger v. Gonzales</u>, No. 07-CV-10533, 2007 WL 2351006, at *5-7 (E.D. Mich. Aug. 15, 2007); <u>United States v. Tonry</u>, 433 F. Supp. 620, 623 (E.D. La. 1977); <u>United States v. Jackson</u>, 433 F. Supp. 239, 241 (W.D.N.Y. 1977).

Bialek asserts that concurrent criminal jurisdiction conflicts with other provisions in FECA, but we disagree. For example, Bialek contends that the FEC's power to render advisory opinions, <u>see</u> 2 U.S.C. § 437d(a)(7), would be "rendered meaningless" if the Attorney General could pursue criminal sanctions for conduct that the Commission might, through its own investigation, condone. Relatedly, he posits that the FEC could issue an advisory opinion endorsing certain conduct, but that the Attorney General might prosecute this same conduct as violating the statute. These concerns are misplaced. We have no reason to believe that courts would not give weight to the FEC's interpretation of its governing statute, as reflected in an advisory opinion, even in a criminal case initiated by the Attorney General. <u>See</u> <u>In re Sealed Case</u>, 223 F.3d 775, 779-80

<hr/>

[5](...continued)
change does not affect the Ninth Circuit's reasoning, and Bialek is without support when he claims that this portion of the 1979 amendments was intended to overrule the Ninth Circuit. In fact, the four-vote requirement was reported by the House committee weeks before the Ninth Circuit's decision. <u>See</u> <u>Fieger v. Gonzales</u>, 07-10533, 2007 WL 2351006, at *7 (E.D. Mich. Aug. 15, 2007).

(D.C. Cir. 2000). And regardless of whether a case is civil or criminal, there is only one final arbiter of the interpretation of FECA: the federal courts. As a result, even if interpretive disagreements between the Attorney General and the FEC were to arise, they would be resolved in the normal course of litigation.

No more compelling are Bialek's arguments that concurrent jurisdiction undermines the purposes of FECA. For example, he theorizes that individuals will assert their Fifth Amendment privilege in FEC proceedings more frequently because they fear independent DOJ prosecutions. This, he warns, will thwart the FEC's efforts to resolve campaign finance disputes through voluntary agreements.

The privilege against self-incrimination, of course, "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." Kastigar v. United States, 406 U.S. 441, 444 (1972). We have some difficulty understanding why an individual's decision to invoke the privilege in a civil FEC proceeding would turn on whether the threat of eventual criminal prosecution comes from the DOJ rather than the FEC itself. An individual's decision to invoke the privilege is always one of personal choice no matter which agency takes the investigatory lead, and the effect of concurrent jurisdiction on that decision would be speculative and likely inconsequential.

In support of his argument that the FEC cannot share concurrent criminal jurisdiction with the DOJ, Bialek cites United States v. LaSalle National Bank, 437 U.S. 298 (1978). That case, however, does not speak to the issue at hand.

LaSalle addressed 26 U.S.C. § 7602, which authorizes the Internal Revenue Service ("IRS") to issue investigative summonses but explicitly prohibits it from doing so after a tax case has been referred to the Attorney General for criminal prosecution. Id. at 311. Specifically, the Court interpreted that statute's additional requirement that such prereferral summonses be issued in good faith, a condition which bars the IRS from pursuing an investigation solely for the purpose of criminal prosecution. Id. at 313-14. FECA's language, however, places no analogous limitations on the FEC's investigative powers. Nor do we have any occasion to entertain analogous policy concerns about the concurrent investigatory powers of the FEC and the DOJ, as the FEC does not assert the authority to pursue an investigation into a purely criminal campaign-finance violation concurrent with an independent DOJ prosecution. If such circumstances were to arise, we would address them at that time. In the meantime, Bialek does not allege that the FEC has taken any action in his case, let alone action in excess of its broad authority.

Bialek next urges that we consider the legislative history of FECA. Because "it is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls," we arguably have no reason to delve into the legislative history. Edwards v. Valdez, 789 F.2d 1477, 1481 (10th Cir. 1986). But even if we do consider it, that history only serves to bolster the government's position. For example, a House

- 12 -

committee report stated that the 1976 amendments would "channel[] to the [FEC] complaints . . . other than complaints directed to the Attorney General and seeking the institution of a criminal proceeding." H.R. Rep No. 94-917, at 4 (1976) (emphasis added). Likewise, Senator Cannon, who sponsored those amendments, stated that they would "grant exclusive civil enforcement of the act to the Commission . . . but at the same time, retain the jurisdiction of the [DOJ] for the criminal prosecution of any violations of this act." 94 Cong. Rec. S3860-61 (daily ed. Mar. 22, 1976) (statement of Sen. Cannon).

Bialek has plucked one contrary specimen of evidence from FECA's long legislative history: The 1976 floor statement of Senator Brock, an opponent of the 1976 amendments. Brock stated that passage of the amendment would mean that

> the Justice Department is no longer able to prosecute on its own. If an aggressive district attorney finds a clear violation of the law, he cannot take the person into court. He must refer the case to the [FEC]. . . . The Justice Department can take no further action—even if it violently disagrees with the [FEC's] decision.

94 Cong. Rec. S6480 (daily ed. May 4, 1976) (statement of Sen. Brock).

Isolated statements such as these merit little weight. They are the slenderest of reeds because opponents of legislation, "[i]n their zeal to defeat a bill, . . . understandably tend to overstate its reach." NLRB v. Fruit Vegetable Packers Warehousemen, 377 U.S. 58, 66 (1964). Senator Brock's opposition is

- 13 -

the lone suggestion in thirty years of legislative debate, federal court decisions, and federal regulations that the 1976 amendments are susceptible to the drastic reading that Bialek urges. This statement cannot overwhelm the plain language of the statute, let alone the other evidence of legislative intent already discussed.

Even the FEC and the DOJ themselves have long agreed that the Attorney General maintains independent authority to investigate and prosecute campaign finance crimes. A 1978 Memorandum of Understanding ("Memorandum") between the two agencies unambiguously contemplates that the DOJ will investigate criminal campaign finance violations independently. 43 Fed. Reg. 5441 (1978). The Memorandum provides for information sharing with the FEC where "information comes to the attention of the [DOJ] indicating a probable violation [of FECA]." Id. In such cases, the DOJ will "continue its investigation to prosecution" but share information with the FEC as appropriate and, if criminal charges do not result, refer the matter to the FEC for civil investigation. Id. The Memorandum also demonstrates that both the FEC and the DOJ have long assumed that investigations may originate with either entity and that referrals may be made in either direction. We need not afford formal deference to the Memorandum to observe that the very bodies whose authority is implicated have consistently understood that FECA means what it says, and nothing more. See CF Indust., Inc. v. FERC, 925 F.2d 476, 478 (D.C. Cir. 1991).

Bialek's remaining arguments, based in policy, are easily dismissed. First, he argues that our construction of the statute would allow a dissenting commissioner, upon failing to garner the four votes necessary for formal referral to the Attorney General, to take matters into his own hands by simply "walk[ing] across the street" to the DOJ.[6] Yet, it is doubtful that Congress would implicitly divest the DOJ of its authority based on a hypothetical fear of insistent FEC commissioners. We expect that FEC commissioners, like any other government officials, follow the law.

Bialek also maintains that Congress intended FECA's referral provision to be the exclusive mechanism for initiating criminal investigations because it wished to depoliticize campaign finance investigations. We agree that it is "fair to infer that Congress was concerned that complainants and the FEC might launch unfounded, partisan accusations that could injure a candidate merely because they were published." Operating Engineers, 638 F.2d at 1164. But nothing in the statutory history suggests, even in passing, that Congress had similar concerns about theoretical abuses by the Attorney General. Moreover, as the Court observed in Morgan, additional protections, both constitutional and procedural, are available to criminal defendants but not to the targets of civil complaints. Indeed, Morgan explicitly rejected the argument—renewed by Bialek—that

---

[6] We take judicial notice of the fact that the FEC is actually a full block away from the main DOJ building. See United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 698 (1899).

- 15 -

Congress intended the referral mechanism to prevent malicious prosecution. 222 U.S. at 282. In a criminal prosecution for statutory violations by the Attorney General, defendants retain the "chosen instruments of the law to protect the citizen against unfounded prosecutions," such as the requirement that witnesses testify under oath before a grand jury. Id. As in Morgan, nothing in the nature of the offense, "or in the language of the statute, . . . indicates that Congress intended . . . to confer upon [violators of the act] a privilege not given every other person charged with a crime." Id. If Congress thought that the usual protections would be insufficient in criminal campaign finance cases, it easily could have drafted statutory language to that effect.[7] Finding no such language in the Act or its amendments, we conclude that Bialek's interpretation of the statute is meritless.[8]

_____

[7] Instead, Congress rejected explicit language to that effect: A Senate draft version of the 1974 Amendments would have given the FEC the exclusive criminal referral powers that Bialek attempts to read into the present statute. The draft provided that FECA violations would be prosecuted by the Attorney General only with the consent of the FEC. S. 3044, 93d Cong. § 207(a) (1974). In conference, however, this language was removed, and the Conference Report specifically noted that "[t]he primary jurisdiction of the [FEC] to enforce the provisions of the Act is not intended to interfere with the activities of the Attorney General or [DOJ] personnel in performing their duties . . . ." H.R. Rep. No. 93-1438, at 22 (1974). It is clear from these changes that Congress considered and rejected giving exclusive criminal jurisdiction to the FEC. See also Pub. L. No. 93-443, 88 Stat. 1263, 1280 (1974) (enacted amendments, excluding the proposed § 309(d)).

[8] Because we affirm the district court for the reasons stated, we do not address the FEC's alternate argument that Bialek has failed to state a claim

(continued...)

- 16 -

**III**

For the reasons explained, the judgment of the district court is

**AFFIRMED**.

---

[8](...continued)
against the Chairman, or the Attorney General's alternate argument that equitable principles prohibit Bialek from collaterally attacking a criminal investigation.