*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0346p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GEOFFREY N. FIEGER, et al.,

    *Plaintiffs-Appellants,*

    *v.*

UNITED STATES ATTORNEY GENERAL, et al.,

    *Defendants-Appellees.*

No. 07-2291

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-10533—Lawrence P. Zatkoff, District Judge.

Argued: July 24, 2008

Decided and Filed: September 15, 2008

Before: COLE and CLAY, Circuit Judges; RUSSELL, District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael R. Dezsi, FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, P.C., Southfield, Michigan, for Appellants. Eric Fleisig-Greene, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Greg J. Mueller, FEDERAL ELECTION COMMISSION, Washington, D.C., for Appellees. **ON BRIEF:** Michael R. Dezsi, FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, P.C., Southfield, Michigan, for Appellants. Eric Fleisig-Greene, Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Greg J. Mueller, Kevin Deeley, David Kolker, FEDERAL ELECTION COMMISSION, Washington, D.C., for Appellees.

---

## OPINION

---

    RUSSELL, District Judge. Plaintiffs Geoffrey N. Fieger, Nancy Fisher, and Fieger, Fieger, Kenney and Johnson, P.C. (collectively, "Plaintiffs") appeal the dismissal with prejudice of their action challenging an ongoing grand jury investigation into Plaintiffs' alleged violation of federal campaign finance laws, challenging the district court's decision that: 1) the statutory language of the Federal Election Campaign Act (the "Act"), legislative history, and case law together indicate that the Act permits the Attorney General to conduct independent investigations into suspected

---

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

criminal violations of campaign contribution laws without a referral from the Federal Election Commission; 2) Plaintiffs are not entitled to have a court compel the FEC to apply the alleged terms of the Act pursuant to APA §§ 701-706; and 3) Plaintiffs are not entitled to a writ of mandamus to compel FEC action in the instant case.

## BACKGROUND

Plaintiff-Appellant Geoffrey N. Fieger is a licensed attorney in the state of Michigan and president of the law firm Fieger, Fieger, Kenney & Johnson, PC ("FFKJ"). Plaintiff-Appellant Nancy Fisher is FFKJ's office manager. On February 5, 2007, Plaintiffs filed a three-count complaint against Defendants Alberto R. Gonzales, United States Attorney General, and Michael E. Toner, Chairman of the Federal Election Commission (FEC). In Count I, Plaintiffs sought a declaratory judgment that the Defendants acted contrary to the plain language of the Act, which they assert bars the Attorney General and subordinate agencies from conducting an investigation of alleged violations of the Act until the FEC has investigated the matter itself and referred the matter to the Attorney General by an affirmative vote of four of its members. In Count II, they maintained that the FEC's failure to comply with the requirements of the Act violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. In Count III, Plaintiffs sought a writ of mandamus from the district court compelling the FEC to perform what Plaintiffs assert are its statutorily defined duties pursuant to the Act.

The district court held that the Plaintiffs could not maintain their causes of action under either the APA, 5 U.S.C. §§ 701-706, or the federal mandamus statute, 28 U.S.C. § 1651(a), because they could not show that the FEC "failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). During oral argument, the Plaintiffs conceded that they could not maintain either of these two claims. Therefore, we need not consider Counts II and III on appeal.

The Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431-455, as amended, imposes extensive requirements for comprehensive public disclosure of all contributions and expenditures in connection with federal election campaigns. For example, the Act places dollar limits on individual campaign contributions, 2 U.S.C. § 441b, and forbids contributions in the name of another, 2 U.S.C. § 441f.

The Act establishes the Federal Election Commission with six voting members, no more than three of whom may be affiliated with the same political party. 2 U.S.C. § 437c(a)(1). The FEC is empowered to administer, enforce, and interpret the Act. 2 U.S.C. § 437c(b)(1). The FEC has "exclusive jurisdiction with respect to the civil enforcement" of the Act. *Id.* In exercising its civil enforcement power, the FEC may issue subpoenas, administer oaths, render advisory opinions regarding compliance with the Act, and litigate civil actions through its general counsel. 2 U.S.C. § 437d(a).

The Act specifies that "the power of the Commission to initiate civil actions...shall be the exclusive civil remedy for the enforcement provisions of the Act." 2 U.S.C. § 437d(e). When the FEC decides, through an affirmative vote of at least four of its members, that an individual has violated or is about to violate the Act, it must notify that person of the factual basis for the alleged violation and conduct an investigation. 2 U.S.C. § 437g(a)(2). If the FEC finds probable cause for the suspected violations, it must "attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved." 2 U.S.C. § 437g(a)(4)(A)(i). An affirmative vote of at least four members is required to enter into a conciliation agreement, and any agreement reached amounts to a "complete bar to any further action by the Commission, including the bringing of a civil proceeding." *Id.*

If four or more of the members affirmatively vote that there has been or is about to be a knowing and willful violation of the Act's criminal provisions, the FEC may refer the violation to the Attorney General without regard to the Act's conciliation provisions. 2 U.S.C. § 437g(a)(5)(C). The Attorney General is then required to "report to the Commission any action taken. . . regarding the apparent violation" at regular intervals until a final disposition of the matter has been reached. 2 U.S.C. § 437g(c).

In 1977, the FEC and the Department of Justice jointly formulated a Memorandum of Understanding, which was published in the Federal Register shortly after its adoption. *See* 43 Fed. Reg. 5441 (Feb. 8, 1978). The Memorandum provides, in pertinent part:

> The Department recognizes the Federal Election Commission's exclusive jurisdiction in civil matters brought to the Commission's attention involving violations of the Federal Election Campaign Act...

> ...For the most beneficial and effective enforcement of the Federal Election Campaign Act...those knowing and wilful violations which are significant and substantial and which may be described as aggravated in the intent in which they were committed, or in the monetary amount involved should be referred by the Commission to the Department for criminal prosecution review...

> Where the Commission discovers or learns of a probable significant and substantial violation, it will endeavor to expeditiously investigate and find whether clear and compelling evidence exists to determine probable cause to believe the violation was knowing and wilful. If the determination of probable cause is made, the Commission shall refer the case to the Department promptly.

> Where information comes to the attention of the Department indicating a probable violation of Title 2, the Department will apprise the Commission of such information at the earliest opportunity.

> Where the Department determines that evidence of a probable violation of Title 2 amounts to a significant and substantial knowing and wilful violation, the Department will continue its investigation to prosecution when appropriate and necessary to its prosecutorial duties and functions, and will endeavor to make available to the Commission evidence developed during the course of its investigation subject to restricting law...

> Where the Department determines that evidence of a probable violation of Title 2 does not amount to a significant and substantial knowing and wilful violation...the Department will refer the matter to the Commission as promptly as possible for its consideration of the wide range of appropriate remedies available to the Commission.

On August 15, 2007, upon Plaintiffs' motion for declaratory judgment, Defendant Gonzales's motion to dismiss, Defendant Toner's motion for summary judgment, and the Plaintiff's motion for limited discovery, the district court dismissed Plaintiffs' complaint with prejudice.

In doing so, the district court reviewed the Act's plain language, its legislative history, and prior cases, concluding that Plaintiffs were not entitled to a declaratory judgment because the Act does not grant the FEC exclusive jurisdiction to enforce the criminal provisions of the Act. Further, the court concluded, the Act does not limit, in any way, the Attorney General's plenary power to enforce the criminal provisions of the Act. The district court also concluded that the FEC was not subject to review under the APA because courts are limited under the APA to reviewing only those

claims of agency action or inaction that are "discrete" and "legally required," and the Act does not specify any "discrete action" the FEC is "required" to take in any particular time frame. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). Finally, the district court found that mandamus relief was unavailing, due to the ongoing nature of the grand jury investigation and the discretion accorded to government officials in deciding whether and when to undertake prosecution. The court concluded that the two exceptions to the mandamus rule did not apply.

## STANDARD OF REVIEW

The Court reviews the district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) *de novo*. *Roberto Clemens Trust v. Morgan Stanley DW, Inc*., 485 F.3d 840, 845 (6th Cir. 2007). Construing all well-pleaded allegations in the complaint as true, the Court may only dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Downie v. City of Middleburgh Heights*, 301 F.3d 688, 693 (6th Cir. 2002) (quoting *Pfennig v. Household Credit Servs., Inc.*, 286 F.3d 340, 343 (6th Cir. 2002) (internal quotations omitted)). Furthermore, in affirming the district court's dismissal, this Court is not limited to the grounds stated in the district court's opinion; instead, the Court may affirm the district court's dismissal for any reason, even one not mentioned by the district court. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548-49 (6th Cir. 1999).

Likewise, the Court reviews the district court's grant of summary judgment *de novo*. *City Management Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir. 1994). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must view the entire record in the light most favorable to the non-moving party. *Smith v. Chrysler Corp.*, 155 F.3d 799, 804 (6th Cir. 1998).

## ANALYSIS

**A. The Act Does Not Preclude the Attorney General From Independently Prosecuting Violations of Federal Campaign Finance Law Without a Referral From the FEC**

The district court correctly concluded that the Act neither grants the FEC exclusive jurisdiction to enforce criminal provisions of the Act nor limits, in any way, the Attorney General's plenary power to enforce the criminal provisions of the Act. Plaintiffs' insistence that the Act does not allow the Attorney General to independently prosecute violations of the Act without a referral from the FEC is without basis or merit. The nature of the criminal investigation procedure established under the Act may be conclusively resolved through three independent bases: the plain language of the Act, the Act's legislative history and case law from our sister circuits.

### 1. The Plain Language of the Act

The plain language of the Act readily resolves the central dispute on appeal; a reading of the Act does not result in ambiguity or lead to an unreasonable result. *Chrysler Corp. v. Comm'r*, 436 F.3d 644, 654 (6th Cir. 2006) (explaining that "legislative intent should be divined first and foremost from the plain language of the statute," and if the text is clear, judicial inquiry is complete).

To begin, it is well-established that "Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government." *United States v. Nixon*, 418 U.S. 683, 694 (1974) (citing 28 U.S.C. § 516). Accordingly, courts have long recognized that "criminal prosecution is 'an executive function within the exclusive prerogative of the Attorney General.'" *United States v. Palumbo Bros., Inc*., 145 F.3d 850, 865 (7th Cir. 1998) (quoting *United States v. Gen. Dynamics Corp*., 828 F.2d 1356, 1366 (9th Cir. 1987)). Congress may delegate these prosecutorial functions to another executive agency or office, *see Case v. Bowles*, 327 U.S. 92, 96-

97 (1946), but "to graft such an exception upon the criminal law...require[s] a clear and unambiguous expression of the legislative will." *United States v. Morgan*, 222 U.S. 274, 282 (1911).

Turning to the pertinent provisions of the Act, we find absent from the statutory text such a "clear and unambiguous expression of the legislative will." *Id.* The relevant provisions of the Act read as follows:

> The Commission shall administer, seek to obtain compliance with, and formulate policy with respect to, this Act...The Commission shall have exclusive jurisdiction with respect to the civil enforcement of such provisions.

2 U.S.C. § 437c(b)(1).

> Except as provided in section 437g(a)(8) of the title, the power of the Commission to initiate civil actions under subsection (a)(6) of this section shall be the exclusive civil remedy for the enforcement of the provisions of this Act.

2 U.S.C. § 437d(e).

While both of these provisions reference the civil enforcement powers of the Commission, they are silent with respect to criminal jurisdiction. The fact that Congress chose to vest exclusive civil jurisdiction in the Commission, while including no such analogous provision regarding criminal jurisdiction, suggests that Congress did not intend to attenuate the traditional criminal enforcement powers of the Attorney General.

Plaintiffs hinge their argument on sections of the Act setting forth the referral mechanism by which the FEC, upon an affirmative vote, may refer cases to the Attorney General for criminal investigation. This procedure is codified in 2 U.S.C. § 437g(a)(5)(C) which states:

> If the Commission by an affirmative vote of 4 of its members, determines that there is probable cause to believe that a knowing and willful violation of this Act. . . has occurred or is about to occur, it may refer such apparent violation to the Attorney General of the United States without regard to any limitations set forth in paragraph (4)(A).

In interpreting this referral mechanism, the district court determined that nothing in the language "addresses, much less restricts, the authority of the Attorney General (or a grand jury) to investigate activities that might constitute criminal violations of the Act." We agree. By its plain terms, this provision concerns only the scope of the FEC's authority. Admittedly, the FEC's decision to make such a referral imposes upon the Attorney General corollary duties of regular monthly reports to the agency until the final disposition of the matter. 2 U.S.C. § 437g(c). Nonetheless, the Act contains no explicit language suggesting that this referral process is the *sole* avenue through which the Attorney General may initiate criminal prosecutions. Absent a clear and unambiguous expression to situate referrals as the exclusive origin of criminal investigation by the Attorney General, this Court should not and will not read such a meaning into the statute.

### 2. Legislative History

While not a necessary inquiry due to the unambiguous plain language of the Act, the legislative history of the Act also supports the Court's decision to affirm the district court's decision. *See Chrysler Corp. v. Comm'r*, 436 F.3d at 654 (stating that "[o]nly when our reading [of a statute] results in ambiguity or leads to an unreasonable result, may we look to the legislative history"). During the congressional debates prior to the amendment of the Act in 1974, Congress explicitly

considered language that would have mandated approval from the FEC prior to the AG undertaking any prosecutorial acts. The original Senate bill contained a clause stating:

> Notwithstanding any other provision of law, the Commission shall be the primary *civil and criminal* enforcement agency for violations of provisions of this Act...Any violation of any such provision shall be prosecuted by the Attorney General or Department of Justice personnel *only after* consultation with, and with the consent of, the Commission.

S. 3044, 93d Cong., § 207(a), sec. 309(d), at 49 (2d Sess. 1974) (emphasis added).

In conference, however, this language was excised, and the Conference Report specifically indicates that "[t]he primary jurisdiction of the [FEC] to enforce the provisions of the Act is not intended to interfere with the activities of the Attorney General or the Department of Justice Personnel in performing their duties. . . " H.R. Rep. No. 93-1438, at 22 (2d Sess. 1974) (Conf Rep.). These changes reflect that Congress expressly decided against granting exclusive criminal jurisdiction to the FEC.

Statements on the congressional floor by drafters of the 1974 Amendments buttress this conclusion. *NLRB v. Fruit & Vegetable Packers & Warehousemen*, 377 U.S. 58, 66 (1964) (cautioning against relying upon the views of a bill's legislative opponents when interpreting a statute and instead looking to the sponsors). For example, Senator Howard Cannon, a primary sponsor of the Act, stated that with the creation of the FEC and its powers, "the Department of Justice would not be deprived of any of its power to initiate civil or criminal actions in response to referrals by the commission or complaints from other sources." 93 Cong. Rec. S18525 (daily ed. Oct. 8, 1974) (statement of Sen. Cannon). Likewise, supporters of the bill in the House expressed similar sentiments. *See, e.g.*, 93 Cong. Rec. H10327 (daily ed. Oct. 10, 1974) (statement of Rep. Hays) ("We allow [the FEC] to go to court independently on civil matters...but all criminal matters must still be handled by the Justice Department.").

The 1976 amendments to the Act also evince congressional intent to retain the Attorney General's independent prosecutorial powers. A House committee report stated that the 1976 amendments would "channel[] to the [FEC] complaints...other than complaints directly to the Attorney General and seeking the institution of a criminal proceedings." H.R. Rep. No. 94-917, at 4 (1976). Similarly, Senator Cannon expressed his belief that the amendments would "grant exclusive civil enforcement of the act to the Commission...but at the same time, retain the jurisdiction of the Department of Justice for the criminal prosecution of any violations of this act." 94 Cong. Rec. S3860-61 (daily ed. Mar. 22, 1976) (statement of Sen. Cannon).

Plaintiffs attempt to make much of one floor statement by Senator Brock, an opponent of the 1976 amendments. Brock stated that the passage of the amendments would create a fundamental shift in the balance of power between the Attorney General and the FEC. Specifically, Senator Brock opined that

> the Justice Department [would] no longer be able to prosecute on its own. If an aggressive district attorney finds a clear violation of the law, he cannot take the person into court. He must refer the case to the [FEC]...The Justice Department can take no further action-even if it violently disagrees with the [FEC's] decision.

94 Cong. Rec. S6480 (daily ed. May 4, 1976 (statement of Sen. Brock).

However, isolated statements made by opponents of a bill are to be accorded little weight because "[i]n their zeal to defeat a bill, [opponents] understandably tend to overstate its reach." *Fruit and Vegetable Packers*, 341 U.S. at 66. Thus, "'[t]he fears and doubts of the opposition are

no authoritative guide to the construction of legislation. It is the sponsors that we look to when the meaning of the statutory words is in doubt." *Id.* (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394-395 (1951). Senator Brock's comment in the record is the sole suggestion in the legislative record, federal court decisions, and federal regulations that the 1976 Amendments are susceptible to Plaintiffs' reading of the Act: that it requires a referral from the FEC before the Attorney General may initiate criminal proceeding. Consequently, the extensive evidence in support of the Defendants' position overwhelms the lone view of a dissenting Senator.

### 3. Case Law

A case analogous to the instant matter was recently considered by the Tenth Circuit. *Bialek v. Mukasey*, 529 F.3d 1267 (10th Cir. 2008). The *Mukasey* case is one of several nearly identical actions filed around the country by plaintiffs affiliated with and represented by FFKJ. The plaintiff Bialek was a medical doctor who provided professional consulting services to FFKJ. *Bialek v. Gonzales*, 2007 WL 1879989, at *1 (D.Colo. June 28, 2007). He, like Plaintiffs, sought a declaratory judgment that the Act bars the Attorney General from investigating or prosecuting criminal violations of campaign finance law absent referral from four FEC commissioners. *Id.* Like the district court in the instant matter, the district court of Colorado dismissed the plaintiff's complaint for failure to state a claim. The Tenth Circuit affirmed the district court's decision for many of the reasons the Court has recounted above. In addition, the Tenth Circuit adopted the reasoning of the Ninth Circuit in *United States v. International Union of Operating Engineers, Local 701*, 638 F.2d 1161 (9th Cir. 1979), which we choose to adopt as well. *Mukasey*, 2008 WL 2497994, at *3.

In *Operating Engineers*, the Ninth Circuit rejected the plaintiff's argument that the referral provisions of § 437(g) of the Act (i.e., if the FEC determines that there is probable cause to believe a "knowing and willful" violation of the Act has occurred, it may refer the matter to the Attorney General for criminal prosecution without prior conciliation efforts) were a precondition to any criminal prosecution by the Attorney General. 638 F.2d at 1168. The court concluded that nothing in the Act "suggests, much less clearly and ambiguously states, that action by the Department of Justice to prosecute a violation of the Act is conditioned upon prior consideration of the alleged violation by the FEC." *Id.* at 1163.

The court focused on the 1977 Memorandum of Understanding, set forth in pertinent part above, in which both the FEC and the Department of Justice acknowledged that the Attorney General "may investigate and prosecute knowing and willful violations [of the Act] without first exhausting FEC's investigative and conciliation procedures." *Id.* at 1166. The court explained that it was to grant "substantial deference...[to] this interpretation of a statute by the agencies charged with its administration." *Id.* at 1166-67. Based on the Memorandum, the plain language of the Act, and its legislative history, the Ninth Circuit determined that "while centralizing and strengthening the authority of the FEC to enforce the Act administratively and by civil proceedings, Congress intended to leave undisturbed the Justice Department's authority to prosecute criminally a narrow range of aggravated offenses." *Id.* at 1168.

Like the plaintiff in *Mukasey*, Plaintiffs insist that the Ninth Circuit's decision has been considerably undercut by the 1979 amendments to the Act. Like the Tenth Circuit, we reject this argument. *See Mukasey*, 2008 WL 2497994, at *3 n.5. In the 1979 amendments, Congress revised the Act to explicitly require four commissioner votes for referral to the Attorney General, whereas the Ninth Circuit considered the previous version of the Act that allowed a majority of the Commission to refer violations without specifying a number of votes. *Compare* Pub. L. No. 93-443, 88 Stat. 1263, 1282 (1974), *and* Pub. L. No. 94-283, 90 Stat. 475, 484 (1976), *with* Pub. L. No. 96-187, 93 Stat. 1339, 1360 (1980).

However, while formalizing the majority-vote mechanism for referrals, the 1979 amendments were not substantively different from earlier versions of the Act. Even in 1974, when Congress created the six-member FEC, it required that "[a]ll decisions of the Commission with respect to its duties and powers under the provisions of this title shall be made by a majority vote of the members of the Commission." Pub. L. No. 93-443, 88 Stat. at 1282. Although the prior versions of the Act did not specify that four votes were needed for referral, there was a tacit understanding of a "requirement of four votes for affirmative action" well before the 1979 amendments. H.R. Rep. No. 94-917, at 4. Morever, the language in the 1979 amendments was first reported on September 7, 1979, nearly three weeks before the Ninth Circuit handed down its decision in *Operating Engineers*. Thus, mere chronology belies Plaintiffs' insistence that the 1979 amendments were enacted to override the effect of the Ninth Circuit's decision. *See Mukasey*, 2008 WL 2497994, at *3 n.5.

Additionally, nearly a decade after *Operating Engineers*, the D.C. Circuit referenced that case as support for its analysis in *Galliano v. U.S. Postal Serv.*, 836 F.3d 1362, 1368 n.6 (D.C. Cir. 1988). Specifically, *Galliano* cited *Operating Engineers* for the proposition that "[i]t is settled that criminal enforcement of [the Act's] provisions may originate either with the FEC...or the Department of Justice." 836 F.3d at 1368 n.6. The timing of the D.C. Circuit case, nine years after the 1979 amendments, further weakens Plaintiffs' argument that those legislative changes somehow stripped the Ninth Circuit's decision in *Operating Engineers* of its persuasive authority.

## 4. Miscellaneous Arguments

Plaintiffs also argue, without merit, that independent prosecutions by the Attorney General would jeopardize the FEC's own civil investigations, because witnesses would invoke their Fifth Amendment rights and thereby deprive the agency of relevant information. The privilege against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). Since the fulcrum of the Fifth Amendment privilege is the potential for self-incrimination, not the nature of the instant proceeding, an individual subject to a civil investigation spearheaded by the FEC would be entitled to invoke the privilege regardless of whether the Attorney General was conducting a concurrent criminal prosecution. *See Mukasey*, 2008 WL 2497994 at *4 ("An individual's decision to invoke the privilege is always one of personal choice no matter which agency takes the investigatory lead, and the effect of concurrent jurisdiction on that decision would be speculative and likely inconsequential."). Thus, Plaintiffs' attempt to mount a constitutional argument under the Fifth Amendment is without merit.

Lastly, Plaintiffs marshal the doctrine of primary jurisdiction, whereby federal courts are to abstain from hearing certain administrative-related matters until the appropriate agency has had the opportunity to interpret unanswered technical and factual issues. If the Attorney General could prosecute without referral from the FEC, Plaintiffs argue, then the Attorney General's prosecutions would constantly be at odds with courts who must defer jurisdiction of the matter to the FEC. To avoid this potential for inconsistent interpretations, Plaintiffs claim that Congress intended to empower the FEC with the first chance to consider the matter and decide whether to refer it to the Attorney General.

Primary jurisdiction is limited, however, to "cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353 (1963). The applicability of the doctrine to cases involving criminal prosecution has been called into question, however. *See e.g., Gen. Dynamics Corp.*, 828 F.2d at 1366 (stating that "[w]hile it is true that the primary jurisdiction doctrine has been applied in criminal cases...its use clearly interferes with the government's authority to prosecute criminal cases."). Thus, while Plaintiffs' invocation of primary jurisdiction

carries some force, its persuasiveness is tenuous at best, especially in light of the overwhelming evidence against Plaintiffs' position.

Thus, the Court joins with the Ninth and Tenth Circuits and finds that the Act neither grants the FEC exclusive jurisdiction to enforce criminal provisions of the Act nor limits, in any way, the Attorney General's plenary power to enforce the criminal provisions of the Act. Plaintiffs' arguments to the contrary are without merit.

## CONCLUSION

For the reasons set out above, we **AFFIRM** the district court's dismissal of Plaintiffs' action with prejudice.