**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JON MARCUS,
                    *Plaintiff-Appellant,*

                    v.

ERIC H. HOLDER JR., Attorney
General; MICHAEL E. TONER,
Federal Election Commission
Chairman; FEDERAL ELECTION
COMMISSION
                    *Defendants-Appellees.*

No. 08-15643

D.C. No.
07-CV-00398-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Submitted July 16, 2009*
San Francisco, California

Filed July 30, 2009

Before: Barry G. Silverman, Richard R. Clifton and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Silverman

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Michael R. Dezsi, Fieger, Fieger, Kenney, Johnson & Giroux, P.C., Southfield, Michigan, for the appellant.

Thomasenia P. Duncan, General Counsel; David Kolker, Associate General Counsel; Harry J. Summers, Assistant General Counsel; Greg J. Mueller, Attorney, Washington, D.C., for appellee Federal Election Commission.

Gregory G. Katsas, Assistant Attorney General; Diane J. Humetewa, United States Attorney; Michael S. Raab, Attorney, Appellate Staff, Civil Division; Eric Fleisig-Greene, Attorney, Appellate Staff, Civil Division, Washington, D.C., for appellee Attorney General.

**OPINION**

SILVERMAN, Circuit Judge:

Jon Marcus claims he is the target of a politically motivated investigation by the United States Attorney General into alleged federal campaign finance violations. He brought suit against the Attorney General and the Federal Election Commission Chairman seeking a declaration that the Attorney General's investigation is unlawful. His claim boils down to this: the Federal Election Campaign Act of 1971, 86 Stat. 11, as amended, 2 U.S.C. §§ 431-455, prohibits the Attorney General from investigating or prosecuting suspected criminal violations of the Act unless the FEC has referred the matter to the Attorney General first. The district court dismissed his case with prejudice, and we affirm. We hold again today, as we did in *United States v. International Union of Operating Engineers, Local 701*, 638 F.2d 1161 (9th Cir. 1979), that the Attorney General need not obtain the permission of the FEC before investigating or prosecuting possible violations of federal election laws.

## I.  Factual and Procedural Background

The Complaint alleges that Marcus was subpoenaed to testify before a federal grand jury as part of an investigation into alleged criminal violations of the FECA. Marcus claims that, during such testimony, the defendants attempted to coerce him to reveal constitutionally protected activities such as the identity of candidates for whom he voted in the 2004 presidential election. Marcus believes that the Attorney General's investigation is unlawful because it did not originate through a referral by the FEC. He seeks a declaration that "Defendants' conduct is unlawful, unconstitutional, and contrary to the requirements of the [FECA]" as well as "any other relief authorized under the laws including costs and attorney fees for bringing this action."

At the district court, Marcus filed a motion for declaratory relief and Defendants filed a motion to dismiss. The court denied the motion for declaratory relief and dismissed the complaint with prejudice. The court relied primarily on our decision in *Operating Engineers*, in which we held that Congress did not impose a limitation on the ability of the Attorney General to prosecute violations of the FECA in allowing the FEC to refer violations to the Attorney General. *Id.* at 1168. The district court also rejected Marcus's argument that the 1979 amendments to the FECA undercut our decision in *Operating Engineers*.

## II. Standard of Review

"Dismissals for failure to state a claim are reviewed de novo." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1142 (9th Cir. 2008). "Allegations of material fact are construed in the light most favorable to the nonmoving party." *Id.*

## III. Analysis

**[1]** The FECA imposes a variety of requirements on federal election campaign activity, expenditures, and contributions. *See* 2 U.S.C. §§ 431-55. For example, it restricts the uses of contributions, *id.* § 439a, places limitations on the amount of contributions and expenditures, *id.* § 441a, and requires identifying statements on certain types of campaign advertising, *id.* § 441d. Violations of the FECA may give rise to civil and/or criminal penalties. *See id.* § 437g. Criminal violations of the FECA must be committed "knowingly and willfully." *See id.* § 437g(d)(1).

**[2]** The FECA also established the FEC with six voting members, no more than three of whom may be affiliated with the same political party. *Id.* § 437c(a)(1). The power of the FEC to initiate civil actions "shall be the exclusive civil remedy for the enforcement" of the FECA, except for certain pri-

vate enforcement actions. *Id*. § 437d(e). The FEC may initiate an administrative enforcement proceeding based upon a complaint made by "any person who believes a violation . . . has occurred" or upon "the basis of information ascertained in the normal course of carrying out its supervisory responsibilities." *Id*. § 437g(a)(1), (2). The FEC initially attempts to correct or prevent violations "by informal methods of conference, conciliation, and persuasion" through which it may enter into a "conciliation agreement with any person involved." *Id*. § 437g(a)(4)(A)(i). A conciliation agreement is a "complete bar" to further FEC action. *Id*. If the FEC believes that a violation has been committed, it may include a requirement in a conciliation agreement that the person pay a civil penalty. *Id*. § 437g(a)(5)(A). If the FEC is "unable to correct or prevent" the violation, it may "institute a civil action for relief." *Id*. § 437g(a)(6)(A).

**[3]** If the FEC "by an affirmative vote of 4 of its members, determines that there is probable cause to believe that a knowing and willful violation [of the FECA or analogous Internal Revenue Service rules] has occurred or is about to occur, it may refer such apparent violation to the Attorney General of the United States without regard to any limitations set forth in [the paragraph regarding the conciliation procedure]." *Id*. § 437g(a)(5)(C). When the FEC "refers an apparent violation to the Attorney General, the Attorney General shall" issue periodic reports to the FEC about "any action taken." *Id*. § 437g(c).

**[4]** Marcus's position is that the Attorney General may not investigate or prosecute FECA violations without first receiving a referral from the FEC pursuant to § 437g(a)(5)(C). We have already rejected precisely this argument in *Operating Engineers*, where we stated that nothing in the FECA "suggests, much less clearly and ambiguously [sic] states, that action by the Department of Justice to prosecute a violation of the Act is conditioned upon prior consideration of the alleged violation by the FEC" and that "it would strain the

language to imply such a condition." 638 F.2d at 1163. Reviewing the FECA's legislative history, we held that "there is substantial direct evidence that Congress did not intend to make criminal enforcement by the Department of Justice contingent upon prior FEC consideration." *Id.* at 1165. More recently, two other circuits have rejected claims identical to Marcus's in cases brought by the same attorney as here, arising out of the same investigation as here. *See Fieger v. U.S. Attorney Gen.,* 542 F.3d 1111 (6th Cir. 2008); *Bialek v. Mukasey*, 529 F.3d 1267 (10th Cir. 2008).

**[5]** Marcus argues that the 1979 amendments to the FECA undermine our holding in *Operating Engineers*. In particular, he contends that the addition of the phrase "by an affirmative vote of 4 of its members" to the referral provision in § 437g(a)(5)(C) reflects congressional intent to require a referral by the FEC before action by the Attorney General. Prior to the amendment, the FECA required a majority vote of the six FEC commissioners for a referral. *See* Federal Election Campaign Act Amendments of 1976, Pub. L. No. 94-283, § 109, 90 Stat. 475, 484 (1976) (FEC could issue a referral if it "determine[d] that there [was] probable cause to believe that a knowing and willful violation" had occurred or was about to occur); 2 U.S.C. § 437c(c) (requirement that "[a]ll decisions of the Commission . . . be made by a majority vote of the members of the Commission."). Therefore, the amendment's change was only to require at least four votes for a referral instead of a majority. In most cases, a majority *would* be four votes, but a majority theoretically could be less than four if a seat were vacant or a Commissioner were recused. This extremely minor change is simply irrelevant to the issue at hand. It does not imply, let alone "clear[ly] and unambiguous[ly] express[ ]" a limitation on prosecutorial responsibility. *See United States v. Morgan*, 222 U.S. 274, 282 (1911).

Next, Marcus claims that the 1979 amendments added a new provision allowing a criminal defendant to introduce a conciliation agreement as evidence of his or her "lack of

knowledge or intent to commit the alleged violation[,]" 2 U.S.C. § 437g(d)(2), and that this shows Congress' desire to establish a procedure by which the FEC first attempts to resolve violations before referring them to the Attorney General. But the provision is identical in all relevant respects to a provision in the FECA prior to the 1979 amendments, then located at 2 U.S.C. § 441j(b). *See* Federal Election Campaign Act Amendments of 1976 § 112, 90 Stat. at 495. Also, nothing in the FECA suggests that a defendant *must* be given the opportunity to enter into a conciliation agreement. In fact, the referral provision states that the FEC may refer a matter to the Attorney General "without regard to any limitations set forth in" the paragraph regarding conciliation agreements. 2 U.S.C. § 437g(a)(5)(C).

Marcus also contends, again incorrectly, that a requirement that the Attorney General issue periodic reports after referral is a "new provision" that supports his position. *See* 2 U.S.C. § 437g (c). That provision has existed since before 1976, and does nothing to question our holding in *Operating Engineers*.[1]

**[6]** Marcus's additional arguments, which do not rely on the 1979 amendments, are foreclosed by *Operating Engineers*. Of these additional arguments, we address only Marcus's repeated insistence that our interpretation is illogical because, "if the FEC votes 5 to 1 *against* referral, the lone disgruntled FEC member can simply walk across the street to the Attorney General to prosecute the matter." This argument simply fails to appreciate that an FEC referral or vote against referral is nothing more than that. As we held 30 years ago, an FEC referral is not a prerequisite to criminal enforcement of the federal election laws by the Attorney General. The absence of a referral is not tantamount to a grant of immunity.

---

[1]Marcus also claims that the 1979 amendments were a "direct repudiation" of *Operating Engineers*, a claim which is belied by the sequence of relevant events. The bill containing the four-vote change was reported by committee on September 7, 1979, which was weeks *before* our decision in *Operating Engineers*. *See Fieger*, 542 F.3d at 1120.

## IV.    Conclusion

**[7]** We have said it before and we say it again: the FECA does not require the Attorney General to receive permission from the FEC before investigating or prosecuting an FECA criminal violation.

AFFIRMED.